WILLIAM P. WALSH v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.—No. 39671.—196 S. W. (2d) 192.

Division Two, September 9, 1946.

378

*Warner Fuller* and *Arnot L. Sheppard* for appellant.

*Charles P. Noell* for respondent; *Douglas H. Jones* of counsel.

LEEDY, J.—On July 24, 1942, plaintiff, while employed as an electrician at the armor plant then being constructed by General Steel Castings Company at Madison, Illinois, was injured, during a switching operation, when he jumped out of the freight car which he was assisting in unloading. The freight car was loaded with 18 reels of electric cable, each weighing from 1800 to 2200 pounds. He sued defendant, Terminal Railroad Association, alleging its servants and agents coupled a locomotive into the car in which he was working, causing the reels of cable to roll and shift, and making it highly dangerous for him to remain therein, and that, discovering himself in danger in the emergency thus created, he jumped from the freight car, and sustained the injuries sued for. The alleged negligence upon which the cause was submitted consisted of the following: That it was the duty of defendant not to couple into and move the car without first giving notice or warning thereof to plaintiff, and that, disregarding their duties in that respect, and without giving any warning or notice whatsoever of their intention to couple into and move the car plaintiff was working in, defendants agents and servants did then and there couple into and move the said car, causing the reels and cable to roll and shift, which necessitated plaintiff in the emergency to jump from said car, injuring him as thereinafter described. The answer contained a general denial, and pleaded contributory negligence in that plaintiff remained in the car after he had been warned that it was to be moved and after he had had sufficient time to get out before it was moved; that he jumped out of the moving car without any reason for doing so when by remaining in it he would have been in a reasonably safe condition; and that if plaintiff desired to get out of the car, he could have done so prior to the time he jumped, and immediately as soon as the car started moving, but that he waited until the car had moved some distance and had increased its speed before trying to get out of the car.

This is the second appeal of the case to this court. On the former appeal, judgment for plaintiff for $25,000.00 was reversed, and the cause remanded. 353 Mo. 459, 182 S. W. 2d 607. At the subsequent trial resulting in the judgment from which the present appeal has been taken, the jury returned a verdict for $75,000.00, $50,000.00 of which was remitted as the condition upon which defendant's motion for new trial was overruled. Judgment was entered for $25,000.00, and defendant appealed.

The points relied on for reversal are: (1) That plaintiff failed to make a prima facie case; (2) that plaintiff's instruction No. 1 was erroneous; and (3) that the verdict in the sum of $75,000.00 is so grossly excessive as to establish conclusively that appellant did not have a fair trial.

The notice of appeal is dated July 14, 1945, and filed in the trial court on the same day. The transcript of the record was filed in the circuit court on November 30, 1945, thus exceeding 90 days, the time prescribed by Sec. 135 of the Civil Code, Sec. 847.135 Mo. R. S. A. (Laws 1943, 353, 393.) Nor does any order of the trial court extending the time appear in the transcript. Our rule 1.04 in that respect provides "In the event that the trial court extends the time to file the transcript such orders and the dates thereof shall be included in the transcript." Both the statute and rule were then in effect, but they were new, and in somewhat analogous circumstances, some leniency has been extended. See Clader v. City of Neosho, 354 Mo. 1190, 193 S. W. 2d 620, and State ex rel. National Advertising Co. v. Seehorn, 354 Mo. 170, 188 S. W. 2d 657. For such reason, we have concluded to follow a similar course in the case at bar, and review the case on its merits.

We find no material difference in the facts developed in the two trials. They are fully stated in the opinion on the former appeal, to which reference is made as if set forth at length herein. There, as here, defendant contended plaintiff had failed to make a case for the jury. We held against that contention. The rule is that ". . . unless the evidence at the second trial is materially different from that introduced at the first trial, or unless we were mistaken as to some controlling fact on the first appeal, our former opinion is the law of the case." Morris v. E. I. DuPont de Nemours & Co., 346 Mo. 126, 129, 139 S. W. 2d 984, 986, citing Denny v. Guyton, 331 Mo. 1115, 57 S. W. 2d 415, and Cunningham v. Doe Run Lead Co., (Mo.) 26 S. W. 2d 957.

The principal respect in which defendant claims the evidence on the two trials differed is that on the former plaintiff testified that "the loose reels commenced to roll within the car," whereas at the trial in question he said they were "unsteady, not jumping around." This contention ignores other portions of his testimony as shown by the following excerpts: "About 3 or 4 seconds later we had another

jolt . . . and by that time the reels of cable on the south end was *moving*. . . . Q. When did you notice the spools begin to *roll*? A. When we got the first jolt, that threw the spools on the south end, they started *moving*, they *moved* about a foot and a half.'' The unsteadiness of the reels referred to by the witness, obviously had reference to the second jolt: ''What I mean by that when the train came in and hit us it pushed them reels about a foot and a half to the north, some way that threw me, and about three or four seconds later, which is not very long, the train pulled out, the reels went back in their original place, but it was still unsteady. That is what I mean by they were unsteady. Q. You didn't say unsteady at the second trial, did you? A. Well, that is jumping around, that is what I meant by it.'' The only other difference pointed out is that in relation to the switch foreman's testimony (Ganzenbach). On the former trial he testified that at the time of the movement ''the truck was gone out of there, they had never reappeared.'' Our former opinion ▇▇ treated this as ''indicating he knew of the former presence of men in and about the car.'' On the present trial he testified that he at no time during that day saw any truck in the vicinity of the car, and from this it is argued there was nothing on the *outside* of the car to indicate the presence of any men working in the car. We do not regard this as materially affecting the matter, particularly in view of his further testimony that he was familiar with the fact that people employed by the various construction companies erecting the plant worked in the cars, and had been for months before this casualty; that he switched about 3500 cars [in what period of time not disclosed] in that plant, ''and the first thing I do before I tie into a car is to see if anybody is in the car, and when anybody is in the car I don't move it until they get out, and if I don't see anybody in the car we proceed to work.'' He testified, as he had on the former trial, that he followed such practice in this instance, e. g., that when his crew backed into the track whereon the carload of cable was located, they stopped about six feet north of it before making coupling; that he walked to the west side of the car ''looking to see if I could see anyone around that car,'' and did not see anyone; that he looked underneath the car to see if there was any blocking under the wheels (which he always did), and then walked around to the east side ''and looked in the door on the east side, and didn't see anyone''; that he got ''right close to the door, where I could look in both ends, the north end and the south end, and there was no one on that [east] side when I looked in''; that the spools kept him ''from looking through the other door''; but he looked ''direct through the door to the west side''; that he didn't know where plaintiff and his partner were, ''but I looked in there and couldn't see anybody, and when I didn't see anybody I give my head man a signal to come back and couple into that car and make our move''; that he was standing ''alongside

the door'' when plaintiff jumped out "after the car moved north."
These differences are inconsequential, and are wholly insufficient to
justify a reexamination of the question, and we adhere to our former
holding that plaintiff made a submissible case.

Plaintiff's instruction No. 1 is assailed for a number of reasons.
After hypothesizing plaintiff's employment at the time and place
in question, and his presence in the car for the purpose of unloading
it, and that he was then and there exercising ordinary care for his
own safety, the instruction authorizes a verdict for plaintiff if the
jury shall further find and believe from the evidence: (1) That
defendant's agents and servants in charge of the locomotive made the
coupling and movement without giving plaintiff any warning or
notice of their intention so to do; *and* (2) that the reels started to
move and roll by reason of the jarring and moving of the car, if
any; *and* (3) that the rolling and shifting, if any, of the reels made
it dangerous and unsafe for the plaintiff to remain in the car, *and*
(4) that defendant's agents in charge of, and operating the locomotive
knew, or by the exercise of ordinary care would have known, that
someone was likely to be in the car incident to unloading it; *and*
(5) that the failure, if any, of those in charge of the locomotive to
warn plaintiff or give him notice of their intention to couple into and
move the car, if so, was negligence (as that term was defined in another
instruction); *and* (6) that as a direct result of said negligence plain-
tiff jumped from the car and was injured; *and* (7) that plaintiff did
not receive any warning from anyone that the car would be moved.

The first complaint is that it hypothesizes that "the reels of cable
. . . started to move and roll . . . and that the rolling and
shifting made it dangerous and unsafe for plaintiff to remain in said
car," thus predicating recovery upon a theory which was not sup-
ported by the evidence. What we have said respecting the evidence
in relation to the movement or shifting of the reels disposes of this
contention without further discussion of it. It is next charged that
the instruction is misleading and confusing in that when it
reaches the point of connecting the alleged negligence with the proxi-
mate cause of plaintiff's injuries, it tells the jury that if it finds that
failure to inform plaintiff of the intention to move the car was
negligence, and that as a direct result of "said negligence", plaintiff
jumped from the car and was injured, then he should recover. It is
claimed that the only hypothesis of negligence submitted by the in-
struction is failure to warn, and that it then told the jury that it might
find for plaintiff on the postulate that failure to warn was the direct
cause of his jumping from the car. Under this point defendant argues
as follows: "Clearly, the direct cause of his jumping from the car was
either the alleged emergency claimed to have been created by the
alleged rolling reels *or his jumping from the car,* either of which was
obviously an independent intervening cause; and moreover, the proxi-

mate cause.'' (Emphasis supplied.) We fail to appreciate how the *cause* of his jumping could also have been the *result* of such act, as stated in the second of these alternatives. We are inclined to the belief that a printer's error crept into the brief and was not detected. We do not regard the instruction as failing to present fairly the entire situation shown by the evidence, nor does it authorize a verdict for plaintiff even though it found the rolls were not rolling or shifting, because, as shown by clauses ''2'' and ''3'' of the summary, a finding of such rolling and shifting, and danger and unsafeness to plaintiff resulting therefrom, were expressly required. Each of the required separate findings was in the conjunctive, ''and'', thus connecting all of them. Moreover, we are of the opinion that the instruction does not unduly emphasize the alleged failure to warn, nor does it, as contended by defendant, ''de-emphasize'' defendant's proof of warning, and hence is not misleading in those respects. Whatever element of confusion may have been presented by the instruction, when standing, alone was dispelled by defendant's instruction No. 2 which told the jury that plaintiff could not recover ''unless he proves by the greater weight of the credible evidence that immediately before he jumped from the car, an emergency arose which an ordinarily prudent person would have considered a threat of bodily injury to him; and that such an ordinarily prudent person would have jumped out of the railroad car under the same or similar circumstances. Therefore, before your verdict herein can be in favor of plaintiff Walsh, you must believe from the greater weight of the credible evidence that one or more of the reels of cable in the railroad car, were rolling to such an extent and in such manner as to indicate to a reasonably prudent person in Walsh's circumstances that it was dangerous longer to remain in said car. On the other hand, if you believe from the evidence herein that plaintiff Walsh jumped out of the car for the reason that he believed that the car was to be moved across the river, or for any other reason, except to avoid the claimed danger from the reels, he cannot recover, and your verdict herein must be for defendant railroad company.''

The remaining objection is that the instruction did not require the jury to find *any facts* upon which defendant's switching crew would be actually or constructively notified of the likelihood of plaintiff's presence in the car, and proceeded on the theory that defendant's employes were in duty bound to warn him regardless of the circumstances, and gave the jury a roving commission to find the existence of the duty to warn upon any facts which seemed to it properly to warrant such a conclusion. We do not so regard it. It was unnecessary to hypothesize the particular facts shown by evidence upon which the jury would have been warranted in finding that the switching crew had actual or constructive knowledge of plaintiff's presence in the car. Clause 4 of the instruction expressly required a finding

that defendants agents in charge of and operating the locomotive knew, or by the exercise of ordinary care could have known that someone was likely to be in the car incident to unloading it. The evidence was sufficient to warrant such a finding, and the instruction required it as a condition to a plaintiff's verdict. ▮ While the instruction is, perhaps, not a model, we fail to find it reversibly erroneous in the respects claimed.

▮ The remaining assignment is that the "verdict of the jury in the sum of $75,000.00 is so grossly excessive as to establish conclusively that appellant did not have a fair trial." Plaintiff's injuries were permanent and severe. On the first trial he had judgment for $25,-000.00 which was reversed on appeal, not for excessiveness, but because of the misconduct of his counsel. At the time he was injured he was, and had been earning $175.00 per week. He was then 36 years of age, and at the time of trial had an expectancy of 28.9 years. Defendant does not make the point, nor argue that, as reduced by the trial court, the amount of the award is excessive, but relies solely on the proposition that because the jury returned a verdict for three times the amount which the trial court permitted to stand "conclusively" establishes that it did not have a fair trial. But it does not follow that because the verdict is too large it is necessarily the result of passion or prejudice. In Cook v. Globe Printing Co., 227 Mo. 471, 127 S. W. 332, this court, en banc, reduced a verdict for plaintiff by exactly the same percentage as in the case at bar, to-wit, 66-2/3%. There plaintiff had judgment for $150,000.00, and it was affirmed on the condition that plaintiff remit $100,000.00. In discussing the doctrine of remittitur, it was said: "The rationale of these late cases is that the fact that a verdict is too large does not itself indicate that the jury were actuated by passion or prejudice, where there was no error in the admission or rejection of testimony or in the instructions of the court, and no misconduct on the part of the jury was shown, and the evidence established that the plaintiff was entitled to a substantial verdict, and that in such case if the plaintiff would consent to a remittitur of a part of his verdict, the defendant could not complain." Such is the situation in the case at bar, and in view of defendant's tacit admission respecting the amount of the award, as reduced by the trial court, we think the judgment should be, and it is, affirmed. All concur.