MARY VENDITTI, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 42275—240 S. W. (2d) 921.

Division Two, June 11, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, July 9, 1951.

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant.

*Louis E. Miller, Miller & Landau* and *B. Sherman Landau* for respondent.

DEW, SPECIAL JUDGE.—The respondent brought this action as plaintiff in the trial court to recover damages for alleged personal injuries and other damages sustained by her while a passenger on one of the defendant's busses in a collision with another of its busses in St. Louis, Missouri. The cause was submitted on the res ipsa loquitur theory. The plaintiff recovered verdict and judgment for $20,000, which was reduced by remittitur to $13,000. Defendant appealed from the original judgment for $20,000, from the subsequent order of remittitur and from the final judgment for $13,000.

This is the second appeal in this case. In a former trial plaintiff obtained a verdict and judgment for $12,750, which, on appeal to this

court, was reversed and the cause remanded because of error in submitting the case to the jury on the issue of general negligence, when the plaintiff's proof tended to establish specific negligence. Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S. W. 2d 599.

The gist of plaintiff's petition is that at the time in question defendant owned and operated the busses which were involved, and was engaged in the transportation of passengers for hire in St. Louis; that on June 28, 1948, plaintiff was a passenger on one of such busses designated as a Lee bus, which was southbound on 20th Street, and as that bus was crossing at Washington Avenue, defendant's Page-Wellston bus violently collided with the Lee bus, causing plaintiff to be violently thrown from her seat therein and directly and proximately causing her to sustain serious and permanent injuries and the damages alleged. The petition further states that the collision was directly and proximately caused by the carelessness and negligence of the defendant in so operating the busses as to permit and cause them to collide with great force and violence.

The answer was in the nature of a general denial. No issue is now made of the ownership and operation of the two busses described, nor that the collision took place.

From the voluminous record before us it appears from the plaintiff's evidence that at a very late hour on June 22, 1948, the plaintiff, a woman then 38 years of age, was a passenger on one of the defendant's busses. She was returning from her work as a machine operator at a carton plant, where she had worked on a late afternoon and evening shift. The bus was being driven south on 20th Street. Plaintiff was dozing as she'sat on the second double seat from the front on the right-hand side, when the collision occurred with another of defendant's busses at Washington Street. She remembered nothing further of what there took place except that she was being assisted by a police officer as she was standing on the sidewalk nearby. She saw the two busses standing close together. She was suffering terrible pain over her entire body, especially in her back, and she was taken in a police car to the City Hospital. The evidence of the extent of her injuries and damages will be more fully stated hereinafter.

The only other witness besides the plaintiff who testified in her behalf concerning the collision was a passenger on the other bus involved in the accident, which was approaching westward toward 20th Street on Washington Avenue. He was seated on a side seat in front, facing south. His first knowledge of the collision was when he was suddenly hurled entirely across the bus, and all the other passengers on the same side were thrown from their seats. After the accident he saw that the bus in which he had been riding had been struck by the other bus described. The center of the bus he was in was "buckled" over to the front door by the collision. On cross-examination this witness said he had not observed the automatic signal

lights at the crossing and at the time of the collision as he was facing south. The verdict for $20,000 was unanimous. On the motion for new trial the court ordered a remittitur of $7000.

■ ■ Defendant's first point is that this court in its ruling on the first appeal in this case established the law of the case, the effect of which, it is claimed, is to require the plaintiff, on retrial, to submit her case on specific negligence; that evidence of the specific cause of the collision was available to plaintiff, and having failed to produce it, the application of the res ipsa doctrine is not justified.

The fact that plaintiff's petition stated a cause of action under the res ipsa loquitur doctrine, and that her evidence in the record before us established such a cause, is evident under the rules of law too well settled to require citations here. The point made is that in a former trial two certain witnesses called by the plaintiff gave testimony tending to show the specific negligence which caused the collision. The reference is to the operators of the two busses, former employees of the defendant, who, in the course of their testimony in plaintiff's behalf, in the first trial, attributed to each other a failure to comply with the automatic traffic signals at the intersection. This court, on the former appeal, upon the record then before the court, affirmed the trial court in its order granting a new trial for error in submitting the cause on general negligence when plaintiff had thus supplied evidence of specific negligence. It is now contended by defendant that it has been shown by the first trial that such evidence is available to her, and that her duty to produce it has become the law of the case by reason of the opinion of this court in the former appeal.

In Gibbs v. General Motors Corporation, 350 Mo. 431, 442, 166 S. W. 2d 575, 581, speaking of the res ipsa loquitur doctrine, the rule was quoted and approved that: ''It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.'' The application of that rule in a given case contemplates, of course, the particular case to which it is being applied, as shown by the record before the court. Whether the chief evidence is practically accessible to the defendant in a negligence case and inaccessible to the plaintiff must be determined from the record. It may be disclosed from the pleadings or from the record of plaintiff's evidence. 'In the first appeal of this case this court discussed fundamental principles of the res ipsa loquitur theory and, among other things, said (p. 602): ''Ordinarily, a plaintiff may not place such burdens upon a defendant by merely showing himself to be ignorant of the facts and that defendant should know the facts. An unlimited application of that reasoning would place too powerful a weapon in ignorance. Consequently, the rule is of re-

stricted scope, to be applied in peculiar and exceptional cases where the demands of justice make its application essential. The reason for the rule is to be found in the particular case before plaintiff may invoke its application, and plaintiff should act in good faith in presenting all the evidence reasonably within his power.''

Defendant asserts that such expression of this court on the first appeal forbids the submission of the case on general negligence in the second trial. It cites Trower v. M.-K.-T. R. R. Co., 353 Mo. 757, 184 S. W. 2d 428, and Walsh v. Terminal R. R. Assn. of St. Louis, 355 Mo. 377, 196 S. W. 2d 192. In both of these cases it is pointed out that one of the essential facts required to make the opinion of an appellate court the law of the case applicable on a subsequent appeal is that the evidence on the later trial is substantially the same. In the Walsh case, 355 Mo. loc. cit. 383, it was said: ''The rule is that * * * 'unless the evidence at the second trial is materially different from that introduced at the first trial, or unless we were mistaken as to some controlling fact on the first appeal, our former opinion is the law of the case.' (citations).'' See, also, Swain v. Anders, 349 Mo. 963, 967, 163 S. W. 2d 1045, 1048.

In the second trial of the case at bar there was no evidence on the plaintiff's part that disclosed her knowledge of the specific negligence which caused the collision, nor that there was then available or accessible to her any proof of specific negligence. The opinion on the first appeal of this case which, of course, dealt with the record then before the court, did not determine what evidence or witnesses would be available or accessible to the plaintiff at a second trial. The fact that two of the defendant's former bus drivers testified for the plaintiff in the first trial on the matter of specific negligence was no assurance that they or either of them would not be dead, missing or otherwise unavailable or inaccessible to the plaintiff at the second trial. The record now before us contains no reference to them. Had the plaintiff been compelled to amend her petition before the second trial to allege specific negligence to conform to the testimony complained of in the first trial, and the proof thereof became thereafter unavailable or inaccessible for the second trial, the plaintiff could not submit her cause on either general or specific negligence. So far as the record now before us is concerned, the plaintiff had the right on second trial to plead, prove and submit her case on the res ipsa loquitur theory.

 Defendant next contends that the court erred in giving plaintiff's Instruction 2 as misstating the burden of proof imposed by law on the plaintiff. The point requires a consideration also of plaintiff's Instruction 1, and defendant's Instruction 3.

Plaintiff's Instruction 1 declared it the duty of a common carrier to exercise the highest degree of care to transport passengers; that if the jury found plaintiff was a passenger on one of defendant's busses

at the time and place in question, she was entitled to such care; that "if you find and believe from the greater weight of the credible evidence in this case" that the bus on which plaintiff was riding and another bus, both owned and operated by defendant, collided "then you are instructed that such facts, if you find them to be true, are sufficient circumstantial evidence to warrant a finding by you that such occurrence was occasioned by some negligence of the defendant, and you may so find, unless you find and believe from other facts and circumstances in evidence that said collision was not due to the negligence of defendant, and if you find and believe from all the evidence in the case that the defendant was negligent in causing and allowing the busses to collide, and that plaintiff was injured as a direct and proximate result thereof, then the court instructs you that the plaintiff is entitled to recover and that your verdict should be in favor of the plaintiff and against the defendant St. Louis Public Service Company". Defendant now makes no complaint of that instruction.

Plaintiff's Instruction 2, the only one complained of, told the jury that "If you find and believe from the greater weight of the credible evidence the *facts* to be as *submitted* in Instruction 1, then the plaintiff has met and carried the burden of proof required of her under the law and under the instructions herein." (Italics supplied.)

Defendant requested and obtained Instruction 3, which told the jury the law does not require defendant to produce evidence to disprove the negligence charged, nor that plaintiff was not injured; but that the law casts upon the plaintiff the burden of proof by the preponderance or the greater weight of the evidence and to the reasonable satisfaction of the jury that the defendant was guilty of negligence directly causing plaintiff's injury, if any; that if the jury found that the evidence of negligence of defendant did not preponderate in plaintiff's favor and did not prove to the jury's satisfaction that defendant was guilty of negligence, then plaintiff would not be entitled to recover and the verdict should be for the defendant.

Defendant argues that Instruction 2, which outlined plaintiff's burden of proof, required the jury to find only the *facts* hypothesized in Instruction 1, and not the *issue* of negligence, without which the burden of proof in this case was improperly stated, and was inconsistent with defendant's Instruction 3. Defendant states in its brief that there was no dispute about the facts as submitted in Instruction 1. Defendant maintains that under McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557, ▆▆▆ a mere showing of the *facts* (that plaintiff was a passenger and that the collision occurred) did not meet the plaintiff's burden of proof; that since the McCloskey case there is no presumption of negligence in a res ipsa loquitur case, but only a permissible inference; that such an instruction based on uncontroverted facts amounted to a direction of a verdict for the plaintiff.

One difficulty with defendant's complaint is that it assumes that the negligence of the defendant was not one of the "facts" which were "submitted" to the jury and which the jury was required to find in Instructions 1 and 2 as a prerequisite to a verdict for the plaintiff. Negligence may have been an inferential fact, and it may have been also an issue in the case, as were the further facts of proximate cause of the accident and its direct results to the plaintiff. Nevertheless, it was a fact, the existence of which was "submitted" to the jury to determine. It was pleaded as an ultimate fact and not as a conclusion, and was vital to the plaintiff's case. Maybach v. Falstaff Brewing Corp., 222 S. W. 2d 87, 92.

In Hulings v. Hulings Lumber Co., 38 W. Va. 351, 18 S. E. 620, 627, it was said: "The question of negligence as a want of ordinary care is generally a mixed question of law and fact, one for the jury, under the instructions of the court." In Swain v. Anders, supra, at page 973, it was held: "Negligence does not become a question of law alone, unless the acts constituting it are of such a character that all reasonable men should concur."

Plaintiff's Instruction 1 did not merely call for the finding of relationship and a collision. On a hypothesis of certain facts to be established by the greater weight of the credible evidence, the jury was further told that such circumstances were sufficient to warrant a finding of the *further fact* that the occurrence was caused by some negligence of the defendant, unless the jury found and believed from other evidence that the accident was not due to any negligence of the defendant; but that if from *all* the evidence the jury believed the defendant *was negligent* in causing and allowing the collision, and the plaintiff *was injured* as a *direct and proximate result of such negligence,* the verdict should be for the plaintiff.

Defendant's Instruction 3 specifically emphasized the law that the burden was upon the plaintiff to prove negligence, proximate cause and injuries by the preponderance of the greater weight of the credible evidence. That instruction implemented plaintiff's Instruction 1 and the burden of proof in the converse. Instruction 2, complained of, required the same degree of proof. Instruction 2 did not direct a verdict. It was one which, if not complete or was not clear, could be cured by other instructions. It was said by this court in Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 947, 69 S. W. 2d 666, 669: "However, all instructions must be read and construed together, and where, taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some of the instructions taken separately may be incomplete and open to criticism."

In Bolino v. Illinois Terminal Ry. Co., 355 Mo. 1236, 200 S. W. 2d 352, the plaintiff's Instruction 1 had "hypothesized the facts under the res ipsa rule." His Instruction 2 told the jury that if they found

"from the greater weight of the credible evidence" the "facts" as submitted in Instruction 1, "then the plaintiff has met and carried the burden of proof required of him under the law and the instructions herein." Instruction 3 in that case declared that the mere fact of death of the deceased while employed by defendant, and the mere filing of the suit by his administrator were of themselves no evidence of defendant's negligence "unless the plaintiff, by a preponderance of the credible evidence in this case, has established negligence on the part of defendant as detailed and described in the instructions given you by the court." Defendant complained of the court's refusal to give its Instruction D, which was another one on the burden of ▮▮▮ proof. This court, on the appeal, considered the instructions together and held that Instructions 2 and 3 had "told the jury that the burden of proof was on plaintiff, and that is all defendant's refused Instruction D did." It was held the refusal of the additional instructions on the burden of proof did not materially affect the merits of the case. For similar treatment of similar instructions see, also, Lanasa v. Downey, 201 S. W. 2d 179.

In Davis v. Kansas City Public Service Co., 233 S. W. 2d 679, a res ipsa case, a similar situation existed, except that plaintiff's Instruction 3, there complained of, told the jury that if they found from the greater weight of the credible evidence "the propositions and issues" as submitted in plaintiff's Instruction 2, the jury should find that plaintiff had met and carried his burden of proof under the law and the instructions, and should find the defendant was negligent. Plaintiff's Instruction 2 had hypothesized the relationship of the parties and a sudden jerk of the street car, throwing plaintiff from' her seat, etc., and the jury were told that such facts, if so found to be true "are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent, and you may so find, unless you find and believe from other facts and circumstances that the occurrence was not due to negligence of the defendant * * *." An Instruction C, for defendant, had been given requiring the proof of plaintiff's case by a preponderance or the greater weight of the credible evidence, and directing a verdict for defendant if the jury found the evidence touching defendant's negligence did not preponderate in plaintiff's favor. This court in that case considered the three instructions together and ruled that the hypothesis referred to in both Instructions 3 and C was "the negligence and the facts and circumstances referred to as constituting negligence hypothesized in Instruction 2, complained of, which the jury were expressly required to find before they could return a verdict for the plaintiff." The opinion further held that Instruction 3, in view of the hypothesis in Instruction 2, did not assume the existence of any facts or circumstances in evidence.

We hold that "the facts as submitted to you" in plaintiff's Instruction 2 included all matters therein required to be determined by the jury as prerequisite to a verdict for the plaintiff, including the defendant's negligence, proximate cause and resulting injuries, and did not shift the burden of proof, assume the existence of any fact or circumstance in evidence, or conflict with defendant's Instruction 3. We rule the point against the defendant.

Defendant's further point is that the court erred in permitting plaintiff to testify in rebuttal as to defendant's witness Randol's testimony relative to her complaints while employed at the U. S. Cartridge Company. Randol had testified from his company's records from 1942 to 1945, showing some 94 occasions when plaintiff had been to the company clinic on various and sundry complaints. He had been excused and had apparently taken his records with him. Later, on further cross-examination of plaintiff, she was asked about one occasion referred to by Randol when the plaintiff had been "sent home to own physician." On redirect-examination, her counsel asked defendant's counsel for the record of that day, and defendant's counsel replied: "All I have is notes, like you and I both." Plaintiff's counsel then stated: "Yes, I have my notes, but I don't have any record of her going home that day, Mr. Boas." Defendant's counsel then stated: "Well, I have," and read in the presence of the jury: "Sent home to own physician." On redirect-examination plaintiff was asked: "Do you recall a single time you ever went to the clinic while working and there complained of any pain in your back? A. I don't recall, no." She was also asked: "Q. Do you recall any statement made by— A. Yes. Q.—him (Randol) in reference to your back? A. No, sir, not my back." The objection that the questions and answers required the witness to pass on the testimony of another witness was overruled. It is argued that the questions and answers invaded the province of the jury. Defendant's counsel's submission of his own recollection as ▮▮▮ to what the witness had testified, waived his objection to the recollection of the plaintiff on the same subject. Furthermore, the jury had heard Randol's testimony and knew what he had testified, and the questions and answers complained of were, at most, immaterial, and harmless. Plaintiff did not undertake · to weigh the credibility of the witness Randol. The point is ruled against the defendant.

Defendant asserts that the court erred in permitting counsel for plaintiff to make a highly prejudicial and inflammatory argument. The testimony as to plaintiff's health before and after the accident was voluminous. Many inquiries were made by the defendant of the plaintiff and the doctors who testified, as to plaintiff's menstrual difficulties prior to the accident, and plaintiff sought by her evidence to prove that she suffered little, if any, from such complaints until after the accident. In the closing argument plaintiff's counsel made,

among other statements, the following, which defendant claims to be prejudicial and inflammatory:

"The only person who ever brought the matter of the female disorders in this case has been the defense lawyer, nobody else, and it is dragged in here in the faint hope, perhaps, somebody is going to be so naive as to be not convinced, but perhaps confused, with that sort of corporate bologna * * *."

"We have never contended, and the proof is without contradiction, we have never contended that this menstrual condition, whatever she may have had up until the operation in July, 1948, was in any way responsible or created by this accident * * *."

"Mr. Boas inquired here - - and I want to say the whole defense of this case is tactics of smear * * *."

"I sometimes wish that I had the power to weave sentences as sharp as the sting of the scorpion's leash, or to coin words red-hot from the bottom of hell, and I would tell you the deep indignation of my soul for the tactics that would for one moment bring one under that sort of smear or suggestion * * *."

"The whole plan behind this is a plan of smear, it seems. Why do I say that? They brought in this man Randol. Where did he come from? * * *"

"Let's take Dr. McFadden; in the whole technique of smear this is one case in which they got out the tarbucket, yes, sir, and used what is known as the tarbucket technique * * *."

"I reiterate, ladies and gentlemen, the tarbucket technique runs throughout this whole case."

In further argument of the plaintiff's counsel he said that there had not been one syllable of testimony on defendant's part to excuse the dereliction of the defendant; that upon that subject the defendant was "silent as a tomb"; that it was one of the inner secrets of the defendant; that too often defendants remain mute because it would be better if they did not say anything; that this was one situation where it did not pay to explain. He said:

"Only the weak and wicked seek the shadows of the night. Only the transactions that cannot bear the sunlight of a searching investigation shrink back in despair from the test of a courtroom. Only the defense that cannot be held up in court or submitted to you is the defense that was not offered wherein we have a right to say in the case of justice, 'Where are they hiding this transaction' and if so, 'Why should it be hidden'."

It is charged by the defendant that by the language last quoted the defense was charged with being sinful, criminal, guilty, unjust, unrighteous, etc., and that the statements were made for the purpose of arousing the passion and prejudice of the jury. The defendant, although not controverting the ownership and operation of the busses,

the relationship of carrier and passenger, and the collision, offered no evidence explanatory of the cause of the accident.

Several matters are pointed out by the plaintiff as justification of the matters complained of. Her counsel points out that the female disorders of the plaintiff prior to the accident were brought into the case by depositions of doctors taken by the defendant, and because of that the subject ▮▮▮ was referred to, but only briefly, by the plaintiff's evidence.

Plaintiff also points to the inquiries made by the defendant's counsel as to certain conditions of the plaintiff's female organs of a chronic nature; that she was divorced and her husband still living, endeavoring to give the impression "too obvious for argument." Plaintiff's counsel said the quoted words regarding the "scorpion's leash" were in connection with his condemnation of the above inference.

Plaintiff also calls attention to the conduct of the defendant's counsel in cross-examination of one of plaintiff's doctors, who had testified that he had taught at the St. Louis University for 25 years. He was then questioned by defendant's counsel:

"Q. How did you happen to leave there? A. Because I wanted to.

"Q. Now, Doctor, isn't it a fact you were kicked out? A. You tell me who kicked me out, now.

"Q. The head of the University? A. Who?

"Q. Who was he? A. You said that to me once before. Now, I want you to tell me—

"Q. I don't know. A. I know you don't know what you are talking about. I resigned three times from St. Louis University and twice they asked me to reconsider. Personally I wasn't there the third time; I wrote them a letter and that ended it.

"Q. Now, tell me— A. Now, they wanted me to stay. I don't know. This man is maligning my character.

"THE COURT: No. You may answer the question, Doctor.

"THE WITNESS: He knows I wasn't because he has no proof of it. A. You are smearing me before the jury.

"Q. I don't know, except my general information. I don't need to smear you; you smear yourself."

Upon objection of the plaintiff, the court instructed the jury to disregard the statement of defendant's counsel.

On cross-examination of one of plaintiff's doctors he testified that he had not yet sent her his bill. He testified that he was waiting until the case was closed, as he did not know whether plaintiff would continue to consult him or go to another doctor. He said, however, he intended to send her a bill when the lawsuit was over, but the amount did not depend on the outcome of the suit. In the course of the defendant's argument to the jury, its counsel said:

"Those doctors haven't sent her a bill. Is there any doubt in your minds why? Did you ever go to a doctor for two and a half years and not have them send you a bill? They want to wait and get their cut of the swag."

Upon objection, the court struck those words and instructed the jury to disregard them. Nevertheless, defendant's counsel proceeded:

"You can take into consideration that fact. If you go to a doctor a few times he sends you a bill. If you don't pay up in six months he writes a little note on there. They have to get by."

The word "bologna" was first used by defendant's counsel when he said: "You twelve people can tell when I am telling you the truth. You can tell if I am trying to give you some 'bologna'".

No objections were made to four of the parts of plaintiff's argument complained of and one objection was made as to materiality which was sustained, an objection was made to one that the words tended to malign the character of defendant's counsel, which was overruled, and one objection to strike as prejudicial was overruled. The objection to the argument referred to, which pertained to the failure of the defendant to produce evidence explanatory of the collision, was overruled. There was no motion on the occasion of any of the statements complained of to discharge the jury or to reprimand counsel. The trial judge saw and heard the arguments made, was familiar with the testimony in the cause, and it was largely a matter of his discretion to determine, on the motion for new trial, whether or not the statements made by counsel for the plaintiff had any prejudicial effect upon the jury under all the circumstances. ▮ We are unable to say, as a matter of law, that they did or did not, nor that there was no provocation or justification for the statements, nor that the court abused its discretion in its rulings. The point is overruled. Crews v. Kansas City Public Service Co., 341 Mo. 1090, 1105, 111 S. W. 54, 62.

▮ Finally, defendant insists that the judgment, as reduced by remittitur to $13,000, is excessive. In the recent case of Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S. W. 2d 426, it was said that in considering the size of the verdict, the trial court could weigh the conflicting evidence, and if upon appeal, it be found that there was sufficient evidence, viewed in the light most favorable to upholding the court's ruling, or to afford reasonable support to the trial court's order for remittitur, then there can be no abuse of discretion, and the court's action should be sustained. That the court exercised its discretion on the precise point is evident from its order of remittitur. Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S. W. 2d 674, 681. There was substantial evidence in the instant case to the effect that plaintiff was badly bruised over many parts of her body, although no bones were fractured; that her whole back was discolored; both legs were swollen from the ankle to the knees; on one leg certain areas were

made tender and filled with fluid; that her left elbow was swollen and black and blue; one finger badly bruised and swollen; her neck so badly injured as to require a neck brace to immobilize the neck muscles; her back was so painful as to require a sacroiliac brace, which she has worn since the accident; that she has sustained organic changes of the brain and a permanent functional nerve disease, causing instability of locomotion and dizziness. She has spent much time confined to her bed; has continuously been under some opiate treatment to alleviate her pain; has suffered and still suffers periods of depression, loss of memory, dizziness, blurred vision, and crying spells. She has been unable to resume her work since two days following the accident; at the rate of her last wages, on a 40 hour a week basis, she has lost wages in the approximate sum of $3563. She has incurred medical expense of at least $540.

In view of the reduced purchasing value of the dollar, of which we take notice, and considering the evidence of plaintiff's damages in the light most favorable to her, we cannot say that the court erred in approving the judgment, after remittitur, of $13,000.

Judgment affirmed. All concur.