**Pete YANKOFF (Plaintiff), Respondent,**

v.

**ALLIED MUTUAL INSURANCE COMPANY, a Corporation (Defendant), Appellant.**

**No. 29372.**

St. Louis Court of Appeals.

Missouri.

April 17, 1956.

Motion for Rehearing or for Transfer to Supreme Court Denied May 11, 1956.

McClintock & Medley, Flat River, for appellant.

Smith, Smith & Coghill and W. Thomas Coghill, Jr., Farmington, for respondent.

MATTHES, Judge.

In this jury tried case defendant appeals from the judgment for $2,068.40 obtained by plaintiff in his action on a policy of insurance. Of the amount awarded, $1,-668.40 was designated as damages, and $400 as attorneys' fee.

The policy insured plaintiff's 1950 Cadillac automobile against loss of or damage to the automobile caused by collision or upset in excess of $50. The policy contained a medical payment clause. Condition 11(a) of the policy provided that when loss occurs the insured (plaintiff) shall protect the automobile, and reasonable expense incurred in affording such protection shall be deemed incurred at the company's expense.

On December 27, 1953, the automobile was damaged as the result of a collision. Plaintiff's wife, a passenger therein, was injured, and she received medical attention. Plaintiff notified the insurance agent of the damage to his automobile on Monday following the collision. During the same week Mr. Charles Medley, an attorney, who was representing the defendant, presented a written estimate or appraisal from Thomas Daffron, who was engaged in the body shop business, which showed the cost of repairing the automobile to be, in the words of plaintiff, "around $624, I think". At that time plaintiff was told by Mr. Medley to take the vehicle to Daffron for repair. Plaintiff objected because "Daffron wasn't capable of repairing the car" (plaintiff's testimony). This estimate had actually been prepared by Joe Stevenson, an employee of Auto Damage Appraisers, a concern that had been employed by defendant to examine the damaged vehicle and make an appraisal.

Plaintiff had purchased the automobile from William Silvey, a Cadillac dealer. Mr. Silvey testified that in his opinion there was no one in that vicinity who could repair the vehicle and restore it to its prewrecked market value. He also stated that the cost of repairing the automobile was "between 14 and 15 hundred dollars". A repair estimate prepared by Mr. Stevenson was submitted to Chris Thoeni, foreman of the body department of Lindberg Cadillac Company, on March 23, 1954. According to this estimate the cost of repairing the vehicle was $646.22. A memorandum attached showed "rear end open", which meant the cost of any repairs to the rear end of the automobile was not included in the figure shown on the estimate. When Mr. Thoeni was asked if the estimate could be considered as a "guaranteed repair bid to repair Mr. Yankoff's automobile", he stated, "the only thing I would guarantee on this is the parts". This estimate was also submitted to plaintiff by Mr. Medley, the representative of defendant. In connection therewith plaintiff testified that he called Mr. Thoeni to ascertain how the car could be fixed "for $600, the way the car was damaged" (plaintiff thought the estimate was approximately $600). He was informed by Mr. Thoeni that "we only bid on the parts that Mr. Medley suggested to us, and that is all".

On March 29th plaintiff notified defendant that the lowest amount he would accept in settlement of the collision loss to his automobile was $1,500 plus all storage parts and medical expense.

Plaintiff's undisputed testimony was that he told the insurance company's representative that "if my car is going to be fixed, it will be fixed at Lindberg, Ted's Auto Body, Silvey-Eaton, Farmington Body Shop, any of those places, but not at Daffron". He was told that, "I will fix it at Daffron or else, won't be no other place."

In April, 1954, plaintiff employed an attorney. Following correspondence between the lawyers, William Silvey was appointed by plaintiff, and Joe Stevenson by defendant, to act as appraisers. These men designated Chris Thoeni as referee, arbitrator, or umpire, and during the early part of August, 1954, Mr. Medley, Silvey, Steven-

son, Thoeni, and plaintiff met at Silvey's place of business and viewed the automobile in its damaged condition. With respect to what occurred, Thoeni testified: "I looked at the automobile, * * * and I saw where there was more damage than what was on here myself, and I suggested, * * * to have it towed to St. Louis and make an estimate on it and give it a thorough check, which we done." Plaintiff agreed on condition that the automobile be returned from St. Louis. The Cadillac was taken to Lindberg Cadillac Company on August 8, 1954. Thoeni prepared a repair estimate. Neither Silvey nor Stevenson was present when the damaged automobile was viewed in St. Louis and the estimate made, although Stevenson later saw the statement that Thoeni prepared. Silvey testified that after the automobile was taken to St. Louis he was never again consulted about making an appraisal or estimate showing the cost of making repairs to the vehicle.

According to the estimate prepared by Thoeni, and his testimony, the cost of repairing the automobile was $1,089.54. A letter was written by Mr. Thoeni, addressed to Yankoff, under date of August 11, 1954, stating, "the total bid on repairing your car, due to being wrecked (wreck only) will be $1,089.54, of which the insurance company is entitled to $132.30, discount on parts and labor". Thoeni testified the letter could have been sent to plaintiff but he couldn't tell whether that was in fact done. At any rate, under date of August 14th, Mr. Medley wrote a letter to Mr. Thoeni, reading as follows:

"This will acknowledge receipt of your letter of August 11, with enclosures to Mr. Pete Yankoff. However, in filling out the forms which I gave you, you placed the amount of the loss at $1,089.44.

"I would appreciate it if you will change this so that it will reflect the actual amount of the loss after allowing for the discounts, which will be $957.24."

Thoeni complied and stated in writing that in his opinion the actual cash value of the automobile on December 27, 1953, was $2,400, and the amount of the loss caused by the collision on that date was $957.24. Stevenson agreed with this finding. Thereafter Mr. Medley offered plaintiff the sum of $957.24.

At the time of the trial, which commenced on April 8, 1955, the automobile was still in the possession of Lindberg Cadillac Company. The total amount due the company for storage of the automobile was $120, two small items amounted to $2.27, making the total due the company of $122.27, of which plaintiff had paid $47.27, leaving a balance due of $75 as of April 9, 1955. Silvey and Eaton had presented a bill to plaintiff for storage of the automobile from December 28, 1953, to August 9, 1954, in the amount of $112. There was evidence that the amount incurred in the treatment of Mrs. Yankoff's injuries was $31.40.

In his petition plaintiff sought recovery for damage to the automobile, medical expenses incurred in the treatment of his wife's injuries, and for the storage charges.

By defendant's refused instruction A, the jury would have been told that the award of the appraisers "in the amount of $957.24 was binding upon the parties and your verdict must be for plaintiff in the sum of $907.24, the amount found by the appraisers less $50.00, as provided in the policy". Defendant insists that the court erred in refusing the instruction, and makes the point that the evidence established that a "binding appraisal had been made pursuant to the terms of the policy". The trial court properly refused the instruction for more than one valid reason. Under the terms of the contract, if the parties failed to agree as to the amount of the loss, each was required, *upon the written demand of either, made within sixty days after receipt of proof of loss,* to select a competent and disinterested appraiser. The appraisers were first required to appoint a competent and disinterested umpire, following which the appraisers "shall then appraise the loss,

stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss". The provisions of the contract were not met in that neither the plaintiff nor the defendant made a demand in writing for appointment of appraisers. This was a condition precedent to an appraisal under the policy terms. Probst v. American Ins. Co., 64 Mo.App. 408; Hawkinson Tread Tire Service Co. v. Indiana Lumbermens Mutual Ins. Co. of Indianapolis, Ind., 362 Mo. 823, 245 S.W.2d 24; Wallace v. German-American Insurance Co., C.C., 2 F. 658; Id., C.C., 41 F. 742; 29 Am.Jur., Insurance, Sec. 1244, p. 929. The appraisal submitted by one of the appraisers and the umpire was not binding as it constituted what has been termed a "common-law appraisement", subject to revocation, and the bringing of the suit effected such revocation. Probst v. American Ins. Co., supra.

The instruction was also patently improper because the jury would have been prohibited from taking into consideration amounts paid for treatment of injuries sustained by plaintiff's wife and amounts paid by plaintiff for storage of his automobile, both of which were recoverable under the terms of the contract.

■ Defendant makes two points, which we consider together. One is that instruction No. 1 covering measure of damages was erroneous because it ignored the defense of a valid and binding appraisal. By the other, defendant attacks instruction No. 9 offered by plaintiff which went to the matter of appraisal of damages. Defendant offered and the court gave instruction No. 3, by which the jury was told that if the parties entered into an agreement to submit the question of damages to appraisers, "pursuant to the terms of the policy in question", and that the parties had each appointed an appraiser who had selected a third appraiser or umpire, and that two of the appraisers agreed upon an award of the amount of damage, that the award was binding and

plaintiff could not recover in excess of the award agreed upon.

Criticized instruction No. 9 informed the jury that even though they found there was an agreement for appraisal, if they further found there was no appraisal in accordance with the agreement, or found the existence of other facts from the evidence, which other elements we do not deem necessary to set out herein, that plaintiff was not bound by the appraisal. It is clear that instruction No. 9 became a part of this case because of instruction No. 3, as demonstrated by this introductory language therein: "With reference to instruction No. 3 read to you regarding appraisal, you are instructed * * *".

Instruction No. 3 should not have been given. Our conclusions in disposing of defendant's contention with respect to its refused instruction A apply with equal force and for both reasons to instruction No. 3. Having prevailed upon the court to give instruction No. 3, the defendant will not now be heard to assert the court committed error in giving plaintiff's instruction No. 9, because the error therein, if any, was invited by defendant. Anderson v. Woodward Implement Co., Mo.Sup., 256 S.W.2d 819, loc. cit. 824, 825; Roeslein v. Chicago & E. I. R. Co., Mo.Sup., 214 S.W.2d 13, loc cit. 18; Mo.Digest, Appeal and Error, ■■■■■ Since there was no binding appraisal, instruction No. 1 was not erroneous in ignoring that question.

■ Because instruction No. 1 is attacked for additional reasons we give it more detailed consideration. This instruction provided the yardstick for the jury to use in resolving the question of the amount due plaintiff. Respecting the damaged automobile the jury was given what we shall call guide one and guide two. By guide one, if the jury found plaintiff's automobile could not be placed in the condition in which it was immediately before the collision by repairing it, they were authorized to award plaintiff the difference in the reasonable market value immediately before and immediately after the collision, less $50. Guide

two authorized a finding for the amount necessary to restore plaintiff's automobile to the same condition in which it was before the collision, less $50, provided the jury found the automobile could be restored to its former condition through the process of repairing it. The instruction also covered reasonable expenses for necessary medical attention for occupants of the automobile injured as the result of the collision; and authorized the jury to award plaintiff the amount of expenses incurred in protecting the automobile from further loss. This covered the storage charges.

Defendant asserts guide one was erroneous in that (1) there was no evidence to support the submission that the automobile could not be placed in its prewrecked condition by repairing it; (2) there was no evidence showing its value immediately after the collision. As we understand defendant's contention with respect to this instruction, as developed in written argument, it does not find fault with guide two. We agree with the first contention. However, the conclusion is irresistible that the jury did not follow the instruction authorizing a verdict for the amount of the difference between before and after value, and consequently defendant's rights were not prejudiced. The amount of the verdict viewed in light of an analysis of the evidence discloses that the jury must have followed that portion of the instruction submitting the cost of repairs as the measure of damages. The evidence of Mr. Silvey, the Cadillac dealer, considered in the light most favorable to plaintiff, shows the cost of repairing the automobile was $1,500. Deducting $50 therefrom, fixed plaintiff's loss at $1,450. The evidence disclosed $31.40 medical expense, and $187 storage bill. The sum of these items is the exact amount the jury awarded plaintiff exclusive of attorneys' fee. Since the verdict was responsive to the evidence, we cannot say defendant's rights were prejudiced because of the inclusion in instruction No. 1 of an element not supported by evidence. General Exchange Ins. Corp. v. Young, Mo.App., 206 S.W.2d 683, loc. cit. 690, 691, affirmed 357 Mo. 1099, 212 S.W.2d

396, loc. cit. 398; Jenicek v. Harrigan, Mo. App., 217 S.W.2d 764, loc. cit. 767.

Defendant presents the point, without support of authority, that the court erred in admitting plaintiff's Exhibit 15, the contention being that such evidence was highly prejudicial to defendant and inadmissible for any purpose. This exhibit was the last statement prepared by Lindberg Cadillac Company covering storage of the automobile to April 9, 1955. It disclosed payment of $47.27 of the total amount that had accrued, and the balance due of $75. Without objection by defendant, and prior to the offer of Exhibit 15, the court admitted Exhibit 4, a storage bill from Silvey and Eaton to August 9, 1954; Exhibit 5, the first bill from Lindberg Cadillac Company for storage in the amount of $45; and Exhibit 7, another storage bill from the same company for $90. In addition to permitting this documentary evidence to be admitted without objection, defendant offered no objection when Mr. Thoeni testified that the balance due his company for storage to April 9, 1955, was $75, the precise amount shown by Exhibit 15. In this situation the defendant is in no position to urge that the trial court committed error with respect to the admission of that exhibit.

With much insistence defendant urges that error resulted from giving instruction No. 2 which submitted the issue of vexatious delay. This point is predicated on the premise that the evidence on that score did not present a jury question.

The statute, Section 375.420 RSMo 1949, V.A.M.S., which is the basis for the imposition of the penalty and attorney's fee, has received repeated attention of the courts. Consequently its meaning and application are well defined. The rule is that while affirmative proof is not required to show vexatious refusal, the penalty should not be inflicted unless the evidence and circumstances show such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial. Merely because the judgment after trial is adverse to defendant's

contention is no reason for inflicting the penalty. Patterson v. American Ins. Co. of Newark, N. J., 174 Mo.App. 37, 44, 160 S.W. 59, 62; Burneson v. Massachusetts Bonding & Ins. Co., Mo.App., 205 S.W.2d 239; Adams v. State Auto Ins. Ass'n of Des Moines, Iowa, Mo.App., 265 S.W.2d 738, loc. cit. 741; Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11, loc. cit. 15; Missouri Digest, Insurance, ☞☜602, 602.1, 602.2, 602.3. Conversely, the penalties do apply and vexatious refusal to pay does become a jury question when the facts and circumstances support a conclusion that the refusal was willful and without reasonable cause. Burneson v. Massachusetts Bonding & Ins. Co., supra, Mo.App., 205 S.W.2d 239, loc. cit. 242, and cases cited.

After careful and exhaustive consideration of the facts and circumstances, we have concluded that the evidence brings this action within that class of cases where the question of vexatious refusal to pay becomes an issue of fact for submission to the jury. Young v. Pennsylvania Fire Ins. Co., 269 Mo. 1, 187 S.W. 856; Curtis v. Indemnity Co. of America, 327 Mo. 350, 37 S.W.2d 616; Hunt v. United States Fire Ins. Co. of New York, 239 Mo.App. 625, 193 S.W.2d 778; Burneson v. Massachusetts Bonding & Ins. Co., supra; Kyle v. Fidelity & Casualty Co. of New York, Mo.App., 244 S.W.2d 418.

We note and emphasize these significant facts and circumstances. After defendant received two open appraisals of the damage done and cost of repairing it, one being for $616.39 obtained week following collision, the other for $646.22 obtained March 23, 1954, it was furnished a firm estimate by Thoeni of Lindberg Cadillac Company, approved by Stevenson on or about August 11, 1954. This showed cost of repairing to be $1,089.54. Instead of offering plaintiff the amount of the loss as reflected by Thoeni's appraisal and as testified to by him, or directing the Lindberg Cadillac Company to repair the automobile, either of which option was available to it, the defendant prevailed upon Thoeni to reduce his estimate $133.30. On the basis of the reduced estimate defendant attempted to settle with plaintiff. We believe it would appear to a reasonable and prudent man, viewing the situation, that if the defendant desired to pay for the loss rather than have the automobile repaired, it should have offered the exact amount of such loss, and anything less than that would not be consistent with good faith and fair action.

Defendant relies upon Boenzle v. United States Fidelity & Guaranty Co., Mo.App., 258 S.W.2d 938; Adams v. State Auto Ins. Ass'n of Des Moines, Iowa, supra; and Jones v. Farm Bureau Mutual Ins. Co., supra. In these cases it was held on the facts presented that the evidence on the issue of vexatious delay did not present a jury question, but because of the gross dissimilarity in the facts they are not controlling in the instant situation.

Defendant's final point is that the court committed error in permitting plaintiff's counsel in closing argument to write figures on a blackboard, and in permitting argument as to values, the contention being that neither argument was supported by evidence. The only indication in the record as to figures placed on a board appears from the objection of defendant's counsel wherein it appears that the figure $2,300 was placed on the board. Otherwise the record is silent in that respect. Quite obviously it is impossible for us to say an argument was prejudicially erroneous when we have no way of knowing what it consisted of. Plaintiff's attorney argued to the jury that plaintiff had testified that the automobile was worth $2,800 to him, and that he had been offered that amount by Mr. Silvey. The objection that the argument was unsupported by evidence was overruled. From what we have heretofore said showing that the jury arrived at its verdict on the basis of the cost of repairing the automobile, the defendant could not have been prejudiced by the argument complained of. Furthermore, the trial court should be allowed large discretion in permitting or restraining the argument, and its ruling will generally be deferred to on appeal. Goyette v. St. Louis-San Francisco R. Co., Mo.Sup.,

37 S.W.2d 552, loc. cit. 556, and cases cited; Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W.2d 921, loc. cit. 929, 930; Shelley v. St. Louis Public Service Co., Mo.App., 279 S.W.2d 182, loc. cit. 187. We cannot say that the action of the trial judge with respect to the argument constituted an abuse of his discretion.

Plaintiff has filed a motion asking for ten per cent of the amount of the judgment as damages. Section 512.160, subd. 4 RSMo 1949, V.A.M.S. There can be no question concerning defendant's good faith in taking the appeal, consequently the motion is without merit and is overruled.

The judgment should be and is affirmed.

RUDDY, Acting P. J., and SAM C. BLAIR, Special Judge, concur.