ROY GOSNEY v. MAY LUMBER & COAL COMPANY, a Corporation, and WILLIAM H. MAY, doing business as May Coal & Lumber Company, Appellants.—No. 38784.—179 S. W. (2d) 51.

Division One, March 6, 1944.

Rehearing Denied, April 3, 1944.

694

*Richard H. Beeson, David P. Dabbs* and *Spurgeon L. Smithson* for appellants.

*Hook & Thomas, Phillip J. Close, Harry L. Thomas* and *Inghram D. Hook* for respondent.

CLARK, P. J.—Respondent (plaintiff) sued appellants (defendants) for $35,000.00 for injuries alleged to have been received in a collision between an automobile driven by respondent and a truck driven by an employee of appellants. The verdict and judgment were for appellants. The trial court granted a new trial, stating as the reason therefor that he had committed error in giving appellants' instruction ''F''. From the order granting a new trial an appeal has been taken to this court.

Appellants offered demurrers to the evidence at the close of plaintiff's case, and at the close of the whole case. The demurrers were overruled and the case submitted to the jury solely upon negligence under the humanitarian doctrine for failure of the driver of appellants' truck to stop, slacken or turn the truck aside.

Because we believe that respondent failed to make a submissible case, we deem it unnecessary to pass upon the correctness of appellants' instruction "F" or upon other points raised in the briefs.

The collision occurred at the intersection of Crysler Road and Thirty-ninth Street in Jackson County. Crysler Road runs north and south, has an eighteen foot concrete slab and with the usable portion of the shoulders is about thirty feet wide. Plaintiff was driving his sedan west on Thirty-ninth Street across Crysler Road. Oscar Steen, an employee of one of the defendants, was driving the truck south along the west half of the concrete slab on Crysler when the front of the truck struck the right rear door and wheel of the sedan four or five feet from its rear bumper.

Gosney, the plaintiff-respondent, testified that there was a stop sign on Thirty-ninth a little east of Crysler. He brought his sedan to a complete stop with its front end about one foot from the east edge of the concrete slab on Crysler. He then saw appellants' truck, about seventy or eighty feet away, approaching from the north on Crysler at a speed of thirty to thirty-five miles per hour. (The truck was loaded with coal and, with contents, weighed nearly 12,000 pounds.) Respondent started his sedan in low gear and drove on the slab. When the front end of the sedan got on the east edge of the slab the truck was fifty or sixty feet away and when the front end of the sedan reached the middle of the east half of the slab the truck was distant forty feet or less, about thirty-five feet. The truck was traveling on the west side of the slab and did not veer to either side or reduce its speed. When the collision occurred the front end of the sedan had crossed the west side of the slab and the rear end was a little past the center. (The sedan was about 16 feet long.) He testified to the speed of his sedan while crossing Crysler Road and the distance in which it could be stopped at various speeds. He said he started in low gear at about two or three miles per hour and attained a speed of fifteen or twenty miles before the collision; that he could stop in ten or twelve feet at fifteen miles per hour, and in one or two feet at six miles. Respondent again took the stand in rebuttal and said he was going about five or six miles per hour when he moved out on the highway and could stop in eight or ten feet.

Elmer Johnson, a motor mechanic, testifying for respondent, said that under the conditions existing at the place of the collision the truck could be stopped in fifty or sixty feet. He said he knew nothing about "reaction time", that is, the time necessary for the driver of the truck to react to the danger and apply the brakes, but said the driver should be on the alert when approaching a well traveled crossroad.

Curtis Moss said he saw the truck about one hundred feet north of the intersection and estimated its speed at twenty miles per hour or a little faster.

Respondent introduced the depositions of William H. May, Jr., son of one of the appellants, and of Oscar Steen, driver of the truck. In his deposition May said he visited the scene shortly after the collision and discovered skid marks on Crysler, commencing from fifty to fifty-eight feet north of, and continuing up to, the center of Thirty-ninth Street; that these marks veered slightly to the west, the east mark being about six inches west of the center of the slab at the start and the west mark being right at the west edge of the slab where they stopped. He saw no marks running east and west on Thirty-ninth Street. He said under the prevailing conditions, counting reaction time, the truck could be stopped in sixty-five or seventy feet going at thirty-five miles per hour and in fifty-five or sixty feet at thirty miles per hour. Steen's testimony in his deposition is at variance with other testimony offered by respondent. Steen said he was driving the truck at thirty or thirty-five miles per hour; that respondent approached on Thirty-ninth Street at about forty miles per hour and drove into the intersection in front of the truck without ever stopping or reducing speed; that when he first saw the sedan was not going to stop the truck was about thirty feet north of the intersection (according to respondent's brief this would be about forty feet from the point of impact) and the sedan was fifty to seventy-five feet away. He said there was snow and ice on both shoulders of the road; that he put on his brakes and was going about five miles per hour when the collision occurred. At first he gave an estimate that at a speed of thirty-five miles he could stop the truck in ten or fifteen feet, but before signing his deposition he changed this estimate to eighty or ninety feet.

We have tried to summarize the evidence offered by respondent in the aspect most favorable to his theory. We find nothing in the evidence offered by appellants which will aid respondent's case.

█ According to respondent's own testimony there is no question of obliviousness, █ for, while his sedan was standing still, he saw the truck approaching at a speed of thirty or thirty-five miles per hour. Therefore, respondent was not in a position of imminent peril until he had started his sedan and proceeded so far that he could no longer by his own efforts stop short of the path of the oncoming truck. [Lotta v. K. C. Pub. Serv. Co., 342 Mo. 743, 117 S. W. (2d) 296, l. c. 300.] In such cases the exact point of imminent peril, depending as it does on estimates of speed and distance, is difficult to determine. However, under respondent's testimony in chief he was not in imminent peril until he had almost reached the center of the concrete slab, for he could stop within a foot or two. If that is true, then, under all the evidence, the truck driver could not stop after respondent reached the zone of peril in time to avoid the collision. After appellants' evidence was in respondent went back upon the stand, in so-called rebuttal, and enlarged his estimate as to the

distance in which he could stop, but he still failed to make a submissible case. Under any view of the matter respondent was not in imminent peril until he had started his sedan and begun to drive upon the east edge of the concrete when the truck was not more than fifty feet away. Nor until then was the truck driver under any duty to apply his brakes and under all the estimates, counting reaction time, it was then too late for the truck to stop in time. In his brief respondent recognizes this weakness in his case and tries to overcome it by reference to the depositions of William H. May, Jr., and Oscar Steen. Respondent stresses May's estimate that at a speed of thirty-five miles per hour the truck could be stopped in forty to sixty feet, but that was without allowing for reaction time. Counting reaction time, May said it would require sixty-five or seventy feet in which to stop the truck. We fail to see how respondent can get any help from Steen's deposition. Respondent does not claim that the deposition, in the form in which it was signed by Steen, is of any assistance to respondent's case and, of course, he could not make such claim. In his deposition Steen said the truck was about thirty feet from the intersection, traveling thirty or thirty-five miles per hour, when he first realized that the sedan, then fifty to seventy-five feet away and coming at the rate of forty miles per hour, was not going to stop. He also said that it would require eighty to ninety feet in which to stop the truck. At the trial, over the objection of appellants, respondent proved that Steen, in giving his deposition before the notary, first said he could stop the truck in ten or fifteen feet, but before signing the deposition changed his estimate to from eighty to ninety feet.

Respondent introduced this deposition, but now seeks to renounce it altogether and to claim the benefit of the answers which the witness first gave to the notary and changed before signing his deposition. These first answers were not admissible as admissions. Steen was not a party to the suit. Apparently he was not in the employ of appellants at the time he gave his deposition. [Murray v. De Luxe Motor Stages (Mo. App.), 133 S. W. (2d) 1074, l. c. 1077.] The witness had the right to correct his answers before signing his deposition. [Davis v. Otto (Mo. App.), 206 S. W. 409, l. c. 410.] The evidence was not admissible to affect the credibility of Steen for he was respondent's witness. Respondent could not claim surprise for he had taken the deposition several weeks before the trial. Also the corrected estimates as to the stopping distance of the truck are in harmony with other evidence on the same point introduced by respondent. The Steen deposition, taken as a whole, is at war with respondent's theory as established by his own testimony and for that reason cannot aid him. [Meese v. Thompson, 344 Mo. 777, l. c. 782, 129 S. W. (2d) 847.]

Respondent places some importance on the testimony of Moss, who estimated the speed of the truck at "Twenty miles or a little faster", some distance north of the intersection, but there was no evidence that the truck continued at the same speed or that even at that speed the truck could be stopped in time when reaction time is considered. Respondent argues that little, if any, consideration should be given to reaction time because the truck driver knew he was approaching a much traveled crossing and should have been on the alert. But, according to respondent's own story, the truck driver could see the sedan at a standstill at the east edge of the intersection while the truck was eighty feet or less away. Until the sedan actually started up the truck driver had no reason to believe it would do so.

There was no substantial evidence that Steen could avoid the collision either by swerving or reducing his speed. Steen stated that there was ice and snow on the shoulders. He also said he applied the brakes and reduced his speed to five miles per hour. The skid marks testified to by respondent's witnesses corroborate Steen's testimony that he applied the brakes and, of course, it follows that the speed of the truck was slackened.

To sum up: respondent says he came to a complete stop with the front of his sedan one foot from the pavement; the sedan was sixteen feet long and the pavement eighteen feet wide; thus it was necessary for the sedan to travel thirty-five feet in order to completely clear the pavement; yet, respondent says, although he saw the heavily loaded truck approaching at a speed of thirty or thirty-five miles per hour and only eighty feet or less distant, he started in low gear and drove upon the pavement.

The testimony fails to make a submissible case. Accordingly, the judgment of the trial court in granting a new trial is reversed and the cause remanded with instructions to reinstate the judgment in favor of appellants. All concur.