WILLIAM CLARIDGE, Respondent, v. FRANK ANZOLONE and STANLEY MAGOGNA, Doing Business as FRANK & STANLEY PRODUCE COMPANY, Appellants, No. 40633—220 S. W. (2d) 32.

Court en Banc, May 9, 1949.

*Milford T. English* for appellants.

*John C. Kappel, Jr., Walter S. Berkman* and *Roberts P. Elam* for respondent.

CLARK, J.—Defendants appeal from a judgment for $10,000.00 in favor of plaintiff. This is a damage suit for personal injuries due to a collision at a street intersection between a motor-cycle driven by plaintiff and a motor truck driven by defendants' employee. The case went to the jury solely under the humanitarian rule for failure "to have stopped said truck, or reduced the speed thereof, or have swerved the same."

The question before us is: did the facts shown by the evidence justify the submission of the case to the jury?

In deciding that question we must, of course, view the evidence in a light most favorable to plaintiff, but, even in a humanitarian negligence case, the burden is upon a plaintiff to establish his case by a preponderance of the credible evidence.

The Missouri humanitarian rule, as stated in Banks v. Morris, 302 Mo. 254, 257 S. W. 482, and in many other cases, is substantially as follows: a defendant is liable for injuring a plaintiff if he sees him [or, where defendant is under a duty to keep a vigilant watch, should see him] in a position of imminent peril, in time, by the exercise of due care and with safety to himself and others, to avert the injury.

The collision occurred in the northeast quadrant of the intersection of Fourteenth and Cole Streets in St. Louis. Fourteenth runs north and south and Cole runs east and west. They cross at right angles. Each street is 36 feet and 9 inches wide from curb to curb. Buildings are along the sidewalk line on all four corners. There is no warning or stop sign at or near the intersection on either street. At the time of the collision, about eleven o'clock in the morning, the weather was clear and the pavements dry. Plaintiff was operating a motorcycle with side car north on the east side of Fourteenth and defendants' employee was driving a truck west on the north side of Cole. The truck was 21 feet long, weighed 6800 pounds and carried a load of about 500 pounds.

Plaintiff testified that he was traveling 18 or 20 miles per hour and continued that speed until the collision. That there was no traffic going east on Cole or south on Fourteenth. That when he was about 5 or 6 feet south of the intersection he saw the truck about 60 feet east of the intersection coming west on Cole at between 20 and 25 miles per hour. "I figured that I had plenty of time, and proceeded on across the intersection . . . and I was about three-quarters of the way across, and I seen he wasn't going to stop, so I tried to get out of his way . . . I turned my motorcycle to the left . . . I was in the northeast quadrant . . . I kept my eye on the truck from the time I started across there, thinking that he was going to stop or slow down to give me enough time to cross the street. I had plenty of time to cross the street if I had stepped my motorcycle up." He said the truck did not swerve or slacken its speed from the time he first saw it until the collision. The right front fender of the truck struck the right rear corner of the side car.

According to plaintiff's estimate, when he first saw the truck he would have been about 33 feet and the truck about 65 feet from the point of impact. If that is an accurate estimate of distance, plaintiff's estimate of the speed of the two vehicles is inaccurate, for according to that he would have been well beyond the point of impact before the truck reached it. That is an example of the difficulty

we often have in trying to reconcile the estimates of witnesses as to speeds and distances. We think plaintiff's estimate is more likely to be accurate as to his own speed than as to the speed of the truck. Also, his estimate as to his position, 5 or 6 feet from the intersection, when he first saw the truck, seems reasonable for a building on the corner would obstruct his view to the east until he got fairly close to the intersection. So, since we know that the collision did occur, we must conclude that when plaintiff first saw the truck it was either closer to the intersection or traveling faster than plaintiff's estimate.

William Drews, a witness for plaintiff, saw the collision from a point on the west side of Fourteenth Street 150 feet north of Cole. He estimated the speed of the truck at 25 to 30 miles and that of the motorcycle at 15 to 20 miles per hour, and he couldn't say that either of them slowed down. "There was a squealing of brakes, before he hit the motorcycle." He said the vehicles collided when the motorcycle was "over half way across in the north part of the intersection," again that the motorcycle was more than three-fourths of the way across the street when the truck was going into the intersection. Pressed for a more precise statement of the position of the motorcycle when the truck entered the intersection, this witness said: "This accident occurred like that, [snapping fingers] you could not figure that . . . I could not possibly give you that."

Wilfred Goetz, another witness for plaintiff, heard the crash and ran to plaintiff's assistance. He said that there were tire marks beginning about 10 feet east of and continuing about 10 feet into the intersection. Policemen arriving soon after the collision did not observe any skid marks.

We find nothing beneficial to plaintiff's case in the testimony offered on behalf of defendants.

The truck driver was under no duty to take action to avoid a collision until plaintiff came into a position of imminent peril. In this case the danger zone was very narrow because plaintiff at all times was fully aware of the approach of the truck and, according to his own testimony, was fully able to extricate himself from danger. [Lotta v. K. C. Pub. Serv. Co., 342 Mo. 743, 117 S. W. (2d) 296; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. (2d) 51; Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47.] When did plaintiff come into a position of imminent peril? Certainly not when he entered the intersection for he could then swerve either to the right or left and avoid the collision. He was not actually in danger until immediately before the impact, for until then he could escape injury by a slight speeding up of his vehicle.

Since it was his duty to watch for traffic at the crossing, we may assume that defendants' truck driver saw plaintiff at about the same time that plaintiff saw the truck. At that time plaintiff mistakenly thought he had ample time to clear the crossing at the speed he was

then traveling. It is reasonable to conclude that the truck driver was of the same opinion. Each driver proceeded on his way without slackening speed; then at some undiscoverable point each realized that a collision was imminent and each took steps to avert it; plaintiff by attempting to swerve, the truck driver by slamming on his brakes. Plaintiff said he expected the truck to stop or slacken speed, but there was nothing in the conduct of the truck driver to induce that belief. Plaintiff did not see the driver of the truck, but he did watch the truck and knew that at all times it was maintaining the same rate of speed.

Under the humanitarian rule it was the truck driver's duty to take action to avoid injuring plaintiff when, in the exercise of the highest degree of care, it became apparent that a collision was imminent. But whether we fix the danger point at the spot and time where and when it became apparent that plaintiff would cross the center line and drive into the path of the truck, or at the time and place where and when it became apparent that he would not clear the crossing at his existing speed and did not intend to increase his speed, we cannot reasonably say that the truck driver could thereafter avoid the collision.

When we consider the estimates of speeds and distances by plaintiff and his witness, we must believe that the truck was traveling little faster than the motorcycle. So when plaintiff crossed the center line he was only a few feet nearer to the point of collision than was the truck. Only by sheer speculation and conjecture, by dissecting a second of time into fractions and guessing at the space between the vehicles, could a jury find that the truck driver could have avoided the collision after plaintiff, fully aware, drove into his path. [Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. (2d) 51; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 74 S. W. (2d) 600; Lotta v. K. C. Pub. Serv. Co., 342 Mo. 743, 117 S. W. (2d) 296; Chandler v. K. C. Missouri, Gas Co., 174 Mo. 321, 73 S. W. 502, 62 L. R. A. 474, 97 Am. St. R. 570.]

We have read the cases cited by plaintiff [Crane v. Sirkin & Needles Co., (Mo. App.) 85 S. W. (2d) 911; State ex rel v. Hostetter, 340 Mo. 211, 101 S. W. (2d) 50; Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463] and find nothing in them out of harmony with our conclusions here.

 We think it would be futile to remand the case for new trial. Plaintiff failed to establish a violation of the humanitarian rule. While contributory negligence is not a defense for violation of that rule, plaintiff's negligence as shown by his own testimony would preclude his recovery for primary negligence if the case should be remanded. Plaintiff, seeing the approach of the truck not much farther away than he was, took a chance in beating it across. Such races, as in this case, often result in a tie with dire consequences to one or both

of the contestants. Plaintiff says that he expected the truck driver to protect him by stopping or slowing. He had no right to expect that. Safety is largely a personal matter. One should not consciously drive into a place of danger, relying upon others to extricate him, and expect to recover for primary negligence if they fail to do so.

The judgment is reversed. All concur, except *Hyde, J.,* dissents in separate opinion.

 CONKLING, J. (concurring).—With the greatest respect for my brother Hyde and the views expressed in his dissenting opinion herein, I concur in the principal opinion written by Judge Clark, and concur also in the disposition of the cause made therein.

It is my view that after the peril arose there was neither sufficient time nor opportunity for defendant to act to try to avoid the collision as that the existence of negligence should be ever adjudged upon the humanitarian theory.

After peril arose hardly more than an instant of time elapsed before the collision. I believe it would be but speculation and conjecture for a jury or a court to undertake to say that in such a fractional space of time anything at all could have been done which would have avoided the collision.

Being of the above opinion I believe the instant situation is one as to which we ought to say that, as a matter of law, plaintiff cannot recover on either primary or humanitarian negligence.

It is said and respondent in his brief contends that defendant's driver should have done one of several other things instead of that which he did do. I think he did the best thing, and did that which most of us, who would thereafter have contended that we were then exercising the highest degree of care, would likely have done under the circumstances which confronted him.

It seems to me that view and contention contrary is but the old story of being able to tell after the event what should have been done, when the critics were not there and were confronted with neither the emergency nor the problem of avoiding collision.

It is not difficult for a litigant, his counsel, a witness or even a juror to look at a situation through the eyes of Mr. Hindsight. There is always a Mr. Hindsight. Sometimes he goes about humble daily tasks. Sometimes he sits in his law office. Sometimes as counsel he conducts the cause in court. Sometimes he testifies as a witness. Often he serves on the jury. He sees clearly and glibly recites how a past occurrence could have been better managed, but, much more likely, if the responsibility had been his, he would have been worried sick and probably would not have done half as well.

 HYDE, J. (dissenting).—I cannot concur in a final complete reversal of this case but would reverse and remand on the ground that

plaintiff might make a humanitarian negligence case on failure to slacken speed or swerve. I fully agree that plaintiff has no such case on failure to stop because he did not show ability to stop after his imminent peril arose.

I also fully agree with what is said in the opinion about the narrowness of plaintiff's zone of imminent peril under the circumstances of this case and the ruling as to when his peril arose. However, as the opinion states, plaintiff had evidence that defendant's truck never slackened speed but continued at the same speed from the time plaintiff first saw it up to the point of collision. The evidence was at least in conflict as to whether the truck driver ever applied his brakes before the collision since the policemen did not observe any tire marks on the pavement. Moreover, the right front fender of the truck struck the right rear corner of the side car of the motorcycle. Thus the plaintiff almost escaped and the slightest slackening or any swerving might have permitted him to escape. This would seem to bring this case within the ruling of such cases as Gann v. Chicago, R. I. & P. R. Co., 319 Mo. 214, 6 S. W. (2d) 39; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864; Tharp v. Thompson (Mo. App.) 139 S. W. (2d) 1116; and Smith v. Thompson, 346 Mo. 502, 142 S. W. (2d) 70. In all of these cases it was held that a jury case on slackening was made because "there was a situation where the plaintiff's car barely failed to clear, so that only the slightest additional time would have been necessary for its escape." [Meese v. Thompson, 344 Mo. 777, 129 S. W. (2d) 847.] I think that the jury might so find from the plaintiff's evidence in this case.