Kathleen L. WILSON, Administratrix of the Estate of Edward G. Jones, Deceased, Plaintiff-Appellant,

v.

Albert TOLIVER, Defendant-Appellant.

No. 45897.

Supreme Court of Missouri, Division No. 2.

Sept. 9, 1957.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 14, 1957.

Russell Roberts, Kirksville, William Turpin, Bowling Green, Hess & Collins, Macon, for plaintiff-appellant-respondent.

Richard DeCoster, Canton, Thomas R. McGinnis, St. Louis, Charles E. Gray, St. Louis, for defendant-appellant-respondent Albert Toliver.

STORCKMAN, Judge.

This is the second appeal in a suit for damages growing out of the collision of two automobiles. At the first trial the plaintiff and the defendant each submitted issues of primary negligence as well as humanitarian negligence. The jury found against the plaintiff on her cause of action and in favor of the defendant in the sum of $16,000 on his counterclaim. The plaintiff appealed and this court held that plaintiff's decedent and the defendant were both guilty of contributory negligence as a matter of law and that the submissions of primary negligence should have been refused. We further held that the defendant made a submissible humanitarian case on his counterclaim. The cause was reversed and remanded for a new trial. See Wilson v. Toliver, Mo., 285 S.W.2d 575.

Upon the second trial, both the plaintiff's cause of action and defendant's counter-

claim were submitted solely under the humanitarian doctrine. The jury found in favor of each of the parties and awarded the plaintiff $2,106.03 which was reduced by remittitur to $1,100. The verdict for the defendant was in the sum of $15,000. Both parties have appealed.

The accident occurred on July 20, 1952, approximately one-half mile east of Lewistown, Missouri, at the intersection of Missouri highways numbers 6 and 16. Each of the parties introduced in evidence without objection a plat or diagram of the intersection. These exhibits, Plaintiff's Exhibit A and Defendant's Exhibit 1, complement each other and in the interest of clarity and a better comprehension of the physical facts they are reproduced herewith as a part of this opinion.

The exhaustive statement of facts in the first opinion, to which we refer, and the exhibits incorporated herein make unnecessary a detailed statement of facts at this time. Briefly, Mo. 6 runs due east from Lewistown for about one-half mile to its intersection with Mo. 16. At the intersection Mo. 6 turns southeast in a sweeping curve. Mo. 16, beginning at the intersection, runs due east, so that Mo. 6 west of the intersection and Mo. 16 are practically on a straight line due east and west. As shown by the exhibits, each highway is marked in the center by a dashed line painted white. The painted center line of Mo. 6 follows the curve of Mo. 6 through the junction. However, the center line of Mo. 16 ends at what would be the northern edge of the westbound traffic lane of Mo. 6 if extended. The heavier dashed lines on Plaintiff's Exhibit A were drawn to enclose and denote the area of the intersection common to both highways. These lines do not appear on the highway surface, as is apparent from Defendant's Exhibit 1.

The plaintiff's intestate, Edward G. Jones, age 68, was driving his 1949 Chevrolet automobile eastward from Lewistown on Mo. 6 intending to cross through the intersection and continue east on Mo. 16. With Mr. Jones in his car were his wife and a sister, Mrs. Bertha Garrett. The defendant Toliver, age 48, traveling alone, was driving his 1950 Hudson automobile westward on Mo. 6. Both highways, including the intersection, are blacktopped and are approximately 24 feet wide. Each car was traveling at approximately 50 miles an hour. The time was about 5:10 a. m. The day was bright and the pavement dry. The terrain at the intersection was comparatively level and there was no traffic or other objects to obstruct the vision of the operators of the two motor vehicles. They came into violent collision at a point in the intersection designated by the cross mark on Plaintiff's Exhibit A and by the circle on Defendant's Exhibit 1. The point of impact was 136 feet east of the western limit of the intersection, 36 feet from the eastern limit, which is a point where the two highways separate and diverge, 18 feet from the northern edge of the pavement and 22 feet from the southern edge of Mo. 16, all as shown on Plaintiff's Exhibit A. The Jones car laid down a single skid mark extending from west of the center line of Mo. 6 a distance of 53 feet to the point of impact. The Toliver car left double skid marks in the westbound lane of Mo. 6 a distance of 50 feet to the point of collision. These skid marks lead to the circle indicating the place of collision and were sketched by witnesses on Defendant's Exhibit 1.

The two automobiles met practically head on. The right side of the front end of each car bore the brunt of the impact. A highway patrolman testified that the alignment of the two cars at the time of collision was not more than 15 or 20 degrees off a straight line. By force of the collision the Toliver car rebounded six feet eastward and the Jones car about 26 feet westward. Jones and his wife were killed instantly, or nearly so. Mrs. Garrett received serious injuries but remained conscious. Mr. Toliver was severely injured and rendered unconscious.

It was admitted in evidence that an automobile running at 50 miles per hour travels a distance of 73 feet per second. It was also stipulated that the average reaction time in the application of brakes by the operator of an automobile is three-fourths of a second.

Plaintiff contends that the decision on the first appeal is not the law of this case because there was different and additional evidence at the second trial, in that the defendant testified that he "realized that he was in danger, and that the plaintiff [Jones] was in danger, at a time when the plaintiff [Jones] was still south of the white line and before defendant had started to apply his brakes; that defendant did not take his eyes off of plaintiff [Jones] from the time plaintiff [Jones] was 150

feet west of the point of impact until the impact; and that defendant's car was in perfect mechanical condition." We have examined the testimony at each trial carefully and do not find it substantially different.

■ As stated in the previous opinion, the term "imminent peril," as used in connection with the humanitarian doctrine, denotes that the peril must be certain, immediate and impending; it may not be remote, uncertain and contingent, and a likelihood or bare possibility of injury is not sufficient. Wilson v. Toliver, Mo., 285 S.W.2d 575, 583. It was not the mere presence of the Jones car on the highway that created imminent peril. Contingent or potential danger exists whenever two vehicles meet on the highway traveling in opposite directions, but that alone does not constitute the imminent peril which is the basic fact of the humanitarian doctrine. Toliver testified that Jones "was holding to his side of the road when I first saw him, with no indications of doing anything else; and then without any signal or warning of any kind, he came across the centerline into my lane of traffic." Read in its complete context, Toliver's testimony was not substantially different from that which he gave at the first trial. We adhere to our holding on the first appeal that "a finding that defendant was oblivious of plaintiff's [Jones'] intention to proceed due east as plaintiff [Jones] first proceeded into the intersection was warranted." 285 S.W.2d loc. cit. 583 [13, 14].

■ The plaintiff also contends that the prior decision was palpably wrong, particularly in holding that Jones was guilty of contributory negligence as a matter of law. We have carefully re-examined the former opinion and we are convinced that the issues raised on that appeal were correctly decided. We adhere to those rulings as constituting the law of this case. Lonnecker v. Borris, Mo., 245 S.W.2d 53, 55; Maxie v. Gulf, Mobile & O. R. Co.,

358 Mo. 1100, 219 S.W.2d 322, 323–324, 10 A.L.R.2d 1273; Walsh v. Terminal R. Ass'n of St. Louis, 355 Mo. 377, 196 S.W.2d 192, 194.

The plaintiff urges that "The court erred by refusing to give plaintiff's Instructions P–6, P–7, P–8 and P–9 because as a matter of law plaintiff had the right-of-way and had the right to proceed across the intersection, and he could not be guilty of contributory negligence as a matter of law because he exercised that right. By continuing across the intersection plaintiff was merely doing that which, as a matter of law, he had a right to commence. If he did not have a right to finish what he had a right to begin, then the right to begin was an illusion."

The plaintiff cites no cases in support of this contention other than our decision on the prior appeal which she contends is palpably wrong. Plaintiff's argument, however, stops short of asserting that Jones was relieved of the duty of exercising the highest degree of care while he was in the common area. Thus he was required to have his car under control, to maintain a careful and vigilant lookout ahead and laterally and, being charged with the duty to look, and since to look was to see, he must be held to have seen what looking would have revealed. See Weis v. Melvin, Mo., 219 S.W.2d 310, and other cases cited in the previous opinion. The evidence shows that Jones did not exercise due care while in and approaching the intersection. We adhere to the holding of the prior decision that plaintiff's decedent and defendant Toliver were both guilty of contributory negligence as a matter of law and not entitled to submit to the jury issues based on primary negligence, which disposes of this contention. The trial court did not err in refusing Instructions, P–6, P–7, P–8 and P–9.

■ Plaintiff makes two charges of error against defendant's Instruction D–1. This is defendant's main instruction and directs a verdict on the theory of humani-

tarian negligence. It is practically identical with the defendant's Instruction 8 given at the first trial. The only change is the insertion of the word "so" in the phrase "if you further find and believe from the evidence that Edward G. Jones, ·deceased, was negligent in failing to *so* turn his automobile." The plaintiff makes no point of this and the addition of this ·word makes no material difference in the instruction. Plaintiff first charges that there was no evidence from which the facts hypothesized in Instruction D–1 could reasonably be inferred. Plaintiff alleges eleven particulars in which she says the evidence was deficient. The subjects of alleged insufficiency concern defendant's physical inability to extricate himself, his obliviousness, his imminent peril, Jones' ability to avoid the collision, the means and appliances he had for so doing, and whether he could have swerved to his right with reasonable safety to himself, his passengers and his automobile. This same instruction was attacked on the previous appeal "because there was no evidence upon which to base a finding, as required by that instruction, that after defendant became in a position of imminent peril, plaintiff could have swerved to his right, with safety to himself, his passengers and his car, and thereby have avoided a collision." This contention was ruled against plaintiff on the former appeal in holding the evidence was sufficient for submission of defendant's counterclaim on the humanitarian theory of negligence. Wilson v. Toliver, Mo., 285 S.W.2d 575, 583. Since there was no substantial variance in the evidence at the two trials, the former ruling is the law of this case.

 The entire complaint presently made against this instruction is actually a further ·refinement and extension of the one made on the first appeal, but if it were not the plaintiff would be precluded by the rule that the decision on the former appeal will be deemed an adjudication, not only of all questions directly raised and passed on, but also of matters which arose prior to the first appeal and which might have been presented at that time but were not. Lonnecker v. Borris, Mo., 245 S.W.2d 53, 55. There was, however, evidence in support of all the facts hypothesized in the instruction. It would serve no useful purpose to repeat here what has been written on this subject in the former opinion. 285 S.W.2d loc. cit. 583. The assignment of error is overruled.

 Further, the plaintiff asserts Instruction D–1 is erroneous in that it "did not require a finding of proximate, direct,. or legal cause." The instruction directed the jury to find for defendant on his counterclaim if "* * * defendant Toliver's injuries and damages, if any, were caused by such negligence * * *." Plaintiff cites the cases of Rogers v. Thompson, Mo., 284 S.W.2d 467, 471, and Branstetter v. Kunzler, 364 Mo. 1230, 274 S.W.2d 240, 245, in support of her contention. The cases, however, involve the sufficiency of the evidence to prove proximate cause and not errors in the instructions submitting the issue. While the Rogers' case has been reversed and remanded by the Supreme Court of the United States, Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, the Missouri rule, nevertheless, is that the evidence must show the negligence charged to be the proximate cause of the damages claimed. It does not follow, however, that the omission of the word "directly" or "proximately" in an instruction is prejudicial error. The purpose of using such words as "directly" or "proximately" is to exclude remote causes. The test is whether the facts hypothesized, from their nature, not only constituted negligence but which, if found, directly and proximately produced the injuries complained of. Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 915 [4]; Grosvener v. New York Central R. Co., 343 Mo. 611, 123 S.W.2d 173, 179 [14]; Riley v. Young, Mo. App., 218 S.W.2d 805, 810 [11].

Instruction D–1 required the jury to find that defendant was in a position of im-

minent peril; that thereafter plaintiff could have avoided colliding with defendant's automobile and injuring the defendant by turning to the right and remaining to the south of the center line of Mo. 6; that plaintiff was negligent in failing to so turn his automobile; and, finally, that the collision and defendant Toliver's injuries and damages, if any, were caused by such negligence. The nature of the facts hypothesized in the instruction were such as to compel a finding of direct and proximate causation as opposed to a remote or speculative cause. The better practice is, of course, to avoid controversy by expressly requiring the causative factor to be direct or proximate, but under the facts of this case the omission was not prejudicial error.

■ The plaintiff's remaining assignment of error is that her Motion for a Directed Verdict upon Defendant's Counterclaim and her motion for judgment in accordance therewith should have been given because the "evidence showed and the jury found that plaintiff was in imminent peril and that thereafter defendant could have avoided the accident." This charge will be disposed of in connection with defendant's sole contention on appeal that the evidence does not support plaintiff's recovery either on any theory of primary negligence or under the humanitarian doctrine. In this and the former opinion we have held that the plaintiff was not entitled to submit primary negligence. We will now consider whether plaintiff's recovery on the theory of humanitarian negligence can be sustained.

Plaintiff's Instruction P–1 predicated recovery upon defendant's ability "to have sufficiently slackened the speed of his said automobile, if you so find, and to have swerved said automobile, if you so find." The collision and its tragic consequences demonstrate that Mr. Jones and the occupants of his automobile did come into imminent peril. The vital question is when this occurred and whether the defendant, in the exercise of the highest degree of care with the means at hand and safety to himself, could have avoided the collision after such peril became or should have become apparent to him.

■ Under the humanitarian doctrine the duty of the operator of a motor vehicle to act in avoidance does not arise until the other party is in a situation of imminent peril. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498 [1]; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33, 35 [4]. And, as we have previously noted, the peril, to be "imminent peril" under the humanitarian doctrine, must be certain, immediate and impending; a mere possibility of injury is not sufficient to create imminent peril. Obliviousness would extend the zone of peril, but the fact that Mr. Jones intended to leave the eastbound lane of Mo. 6 and cross the westbound lane onto Mo. 16 did not create a situation of imminent peril until there was some outward manifestation of such intention that made, or should have made, the intended course of action apparent to the defendant. As stated in Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321: "* * * it is not the mental state of the plaintiff that imposes a duty upon the operator of a vehicle. It is the reasonable appearances of the situation that imposes the duty to act. * * * The question of when the duty to warn commences must be decided upon the issue of reasonable appearances of such obliviousness. It cannot be decided upon subjective considerations as to what the plaintiff thought but must instead be decided upon objective indications of his situation."

■ The doctrine of humanitarian negligence seizes upon the entire situation as it actually exists at the moment reasonably apparent imminent peril comes into existence. West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, 52; Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75.

Mr. Jones' situation of imminent peril could be extended little, if any, by virtue of obliviousness reasonably apparent. The evidence establishes that Mr. Jones did see the Toliver car. Mrs. Garrett testified: "We were coming out of Lewistown and we had passed a white house a little distance back and my brother looked up and I don't know whether I saw the car just at the same time or practically the same time as he did, but he made a remark—I know we saw the car coming; * * *." She further testified her brother said, "I wonder what that guy—" just before the crash occurred. Where the Jones car was when Mrs. Garrett and her brother first saw the Toliver automobile is not definitely established by the evidence. Mrs. Garrett did not know whether the Jones car had entered the west edge of the intersection when they first saw the Toliver automobile. The defendant saw the Jones car when each was about 150 feet from the point of collision.

Obviously, Mr. Jones was not in imminent peril when he entered the intersection 136 feet from the place of collision. He was, in effect, at a "fork in the road"; he had a choice of going through the intersection in either one of two ways. He could have turned his car to the right and followed the curve of Mo. 6 to the southwest. He had just passed two highway markers indicating that Mo. 6 curved to the right, and the evidence tended to show that he had some knowledge of the intersection. Plaintiff suggests that there is no evidence that Mr. Jones had the means or the physical capacity to turn his car or that he could have done so with safety to himself and the other occupants of his car. That his car was equipped with a steering device is evident from the fact that he had driven from Kirksville that morning and we will not speculate, as suggested by the plaintiff, that it may have suddenly become inoperable where there is no evidence to that effect. See Hook v. St. Louis Public Service Co., Mo.App., 296 S.W.2d 123, 127 [5]. From the picture in evidence Mr. Jones appeared to be able-bodied. That he could have turned with safety at a speed of 50 miles per hour is evident from the fact that defendant was traveling around the curve at the same speed.

The evidence does not show how far the Jones car proceeded in the intersection before the increased sharpness of the turn required made such action hazardous. The evidence does show that Mr. Jones commenced the application of his brakes approximately 108 feet from the point of collision which is inferable from the distance of approximately 55 feet traveled during reaction time plus the skid mark 53 feet in length. From this it appears that the application of the brakes began approximately 28 feet after the Jones car entered the intersection and while it was still in the lane of travel marked for eastbound travel on Mo. 6. This is borne out by the fact that the skid mark of the Jones car began south and west of the center line of Mo. 6, that is, in the eastbound traffic lane of Mo. 6.

Under the most favorable view of the evidence it cannot reasonably be said that Mr. Jones was oblivious of his danger for a greater time than it took him to travel the approximately 28 feet from where he entered the intersection to where he started the application of his brakes. At 50 miles per hour he traversed this distance in about one-third of a second, which is negligible in determining the application of the humanitarian doctrine. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498. The distance and time when obliviousness could possibly have been apparent was probably less if it existed at all. The defendant's duty under the humanitarian rule to act in avoidance of the collision arose when, in the exercise of the highest degree of care, it became apparent, or should have become apparent, to him that the Jones car was attempting to cross in front of him rather

than going around the curve of Mo. 6. Can it be reasonably said that the defendant could thereafter have slackened the speed of his car and swerved in such a way as to avoid the collision? We do not think so.

Plaintiff's instruction does not specify the direction in which defendant should have turned, but on this appeal there is no contention that defendant could have averted the collision by turning to his right. In her brief plaintiff states: "Under these circumstances, and traveling 50 miles per hour, defendant easily could have extricated himself from the danger by simply turning to his left, or by slackening and swerving left at the same time, into the 22-foot space which was between the point of impact and the south edge of Highway 6." Thus each is contending that the other should have turned into the same space.

The drivers of the two vehicles involved did not have an equal opportunity to avoid the collision. Each applied his brakes at approximately the same time and distance from the place of collision. However, Mr. Jones, prior to that time, had a clear opportunity to avoid the collision by turning to his right. In connection with such ruling in the former opinion we stated: "Plaintiff [Jones] could have turned his car with greater celerity than he could effect a stop." 285 S.W.2d loc. cit. 583. When he was entering the intersection, 136 feet from the collision point, he could have turned safely to his right into a lane of travel unoccupied by other traffic. Furthermore, it appears that he could have made such a turn for an undetermined distance thereafter.

On the other hand, when defendant was 136 feet from the place of collision the eastbound lane was occupied by the Jones car. It continued to occupy at least a portion of the eastbound lane until it was not more than 53 feet from the collision point, for that is the length of the skid mark it made extending from the eastbound lane of Mo. 6 across the center line to the point of contact in the area of the westbound lane. The Jones car was about 17 feet long, and it may be assumed that the defendant's was about the same length. Under all the circumstances, it cannot be reasonably said that defendant should have anticipated that the Jones car would vacate the lane so that he could safely use it.

It can more reasonably be said that Mr. Jones had a better opportunity and for a longer time and a greater distance to turn to his right because the defendant, after he passed the cut-off between Mo. 6 and 16, had only one proper course of travel and that was in the westbound lane of Mo. 6 toward the spot where the collision occurred. This should have been readily apparent to Mr. Jones and extended the time when he could and should have taken action to avert the collision.

After the Jones car passed the point where he could safely turn to his right, it is wholly unlikely that either driver could do anything to avoid the collision. Allowing for deceleration that may have occurred after the brakes were applied, the accident probably occurred within two seconds or less after the Jones car entered the intersection. Then each of the parties was 136 feet from the collision point and traveling at the rate of 73 feet per second. We recognize that in the last 50 feet when the cars were skidding, effective turning was impossible and the drivers at best could only veer slightly from their respective courses. Neither can be charged with a failure to do more than he did in the last 50 feet. When the Jones car was 53 feet from the collision point it was still partially, at least, in the eastbound lane of Mo. 6. We cannot escape the conclusion that Mr. Jones had the last clear opportunity to avoid the collision. To say that the defendant could have slackened his speed more than he did, or swerved his car after it became apparent that the Jones car was coming into the path of his automobile,

would be indulging in sheer speculation and guesswork. At best, "there would have been but a mere possibility of avoiding the collision, and this is not sufficient to make a submissible case under the humanitarian rule." Paydon v. Globus, Mo., 262 S.W.2d 601, 604; see also Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33; Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788. The evidence furnished no basis for the submission of plaintiff's cause of action under the humanitarian doctrine and the court erred in so doing.

In her reply brief the plaintiff states: "Even if plaintiff did not make a submissible humanitarian case, he did make a submissible primary negligence case, and the case should be remanded for re-trial upon the plaintiff's petition only." The argument in support of this contention is based upon the fact that the plaintiff entered the common area of the intersection first and "had the right of way." This argument again loses sight of the fact that the "right of way" did not free Mr. Jones from the exercise of the highest degree of care, and that such right was at all times subject to the rights of others under the humanitarian doctrine. We adhere to our previous ruling that Mr. Jones was guilty of contributory negligence as a matter of law and that the plaintiff is not entitled to submit primary negligence. Nor does it appear that there is any other or further evidence that plaintiff can adduce upon the issue of defendant's liability under the humanitarian rule, and the plaintiff does not so contend.

The judgment in favor of the plaintiff is reversed. Defendant's recovery is affirmed in the sum of $15,000 with interest from the date of its original rendition. The cause is remanded with directions to enter judgment accordingly.

All concur.