**Frieda BORGMAN, Plaintiff-Appellant,**

v.

**Nellie CRENSHAW, Defendant-Respondent.**

**No. 47826.**

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

Thaine Q. Blumer, Robert E. Gregg, Kansas City, for plaintiff-appellant.

Blumer & Wright, Kansas City, of counsel.

Thomas E. Deacy, Jr., Edward W. Mullen, Deacy & Deacy, Kansas City, for defendant-respondent.

HOUSER, Commissioner.

This is a suit for personal injuries sustained in a collision between two automobiles at a street intersection in Independence. Frieda Borgman, passenger in a car driven by her husband, sued Nellie Crenshaw, the driver of the other car, for $25,000. The case was submitted to the jury under the humanitarian doctrine. After an adverse judgment entered upon a jury verdict for defendant, plaintiff has appealed.

The sole question is whether the definition of "imminent peril" in Instruction No. 5 offered by defendant constitutes misdirection.

The collision occurred in the intersection of Pleasant and Pacific Streets. The intersection is not regulated by traffic signs or lights. The weather was clear and the streets were dry. The collision occurred about 2 p. m. Pacific Street runs east and west. Pleasant Street runs north and south.

Pacific is level and the intersection is level. Pacific west of Pleasant is 28 feet wide, and paved with blacktop. East of Pleasant it is much narrower. Running from west to east on Pacific a motorist jogs to the south at the intersection in order to continue east on Pacific. It is upgrade to the intersection coming from the south going north on Pleasant. Swope campus of the Latter Day Saints Church lies at the northwest corner of the intersection.

The car in which plaintiff was riding (hereinafter "plaintiff's car") was jointly owned by plaintiff and her husband. At the time of the collision those two were returning from a visit at the home of their son, where they had been on family business in which both were interested to the same degree. Plaintiff-passenger sat in the right front seat. Plaintiff's car, northbound on Pleasant, traveling 4 or 5 feet east of the centerline of Pleasant, approached the intersection at about 25 miles per hour (MPH).

Defendant's car, driven by defendant, eastbound on Pacific, approached the intersection at a speed variously estimated at from 5 to 15 MPH.

The views of the respective drivers of these two converging vehicles were unobstructed. Defendant, however, did not see plaintiff's car until the collision occurred. She had been driving on the grounds of Swope campus, and had driven out of the campus and onto Pacific at a point variously estimated at from 40 to 100 feet west of Pleasant. As she proceeded east on Pacific from that point to the intersection she was followed by a police patrol car which happened to be cruising in the vicinity. The policeman driving the patrol car immediately behind defendant's car saw plaintiff's and defendant's cars as they approached the point of collision. The policeman first saw plaintiff's car when it was 100 feet south of the intersection. In his estimation the cars were "timed about right to collide." Plaintiff did not see defendant's car until the two vehicles were a

car's width apart, but plaintiff's husband saw defendant's car as it entered Pacific from Swope campus. When plaintiff's husband first saw defendant's car he applied his brakes. Plaintiff's car laid down skid marks 28 feet long. Plaintiff's car was "practically stopped" at the time of the collision.

Defendant looked for cars approaching on Pleasant and traveling through the intersection, but did not see plaintiff's car. There was no braking of defendant's car as it entered the intersection, and no effort to stop or apply the brakes before the impact. There was no variation in the speed of defendant's car as it entered and traveled into the intersection. Defendant, who was looking straight ahead, intending to proceed east on Pacific, said she was going 5 MPH before and at the time of the collision. Defendant's car did not swerve either to the right or left.

The collision occurred east of the centerline of Pleasant at a point placing the front wheels of plaintiff's car about three feet north of the south curb of Pacific east of Pleasant, and the front wheels of defendant's car just east of the center of Pleasant. Plaintiff's car was headed due north and defendant's car was headed southeast, when the impact took place. The right front fender and bumper section of defendant's car collided with the left front wheel and left front fender section of plaintiff's car. The stopping distance of plaintiff's car, traveling at a speed of 25 MPH, was 56½ feet (27½ feet for reaction time and 29 feet for braking action). The stopping distance of defendant's car, traveling at a speed of 5 MPH, including reaction time, was 7 feet; at 10 MPH, 16 feet; at 15 MPH, 28 feet.

The case was submitted to the jury on humanitarian failure to stop, slacken speed or change the course of defendant's car. Instruction 5 defined "imminent peril" as certain, immediate and impending peril and not the mere possibility of collision or probability of danger, and defined "position of

imminent peril" as "that distance from the point of collision short of which the automobile occupied by plaintiff could not have been stopped by the efforts of its driver" in the exercise of the highest degree of care, with safety to himself, plaintiff and their automobile.

■■ According to appellant she made a submissible humanitarian case on the basis of these calculations: she says plaintiff's car was 55½ feet south of the point of collision when plaintiff's driver first became aware of the defendant's car. She says that if defendant's car was then going 5 MPH defendant's car was 14⅔ feet from the point of collision, capable of stopping in 7 feet, and therefore defendant had 7⅔ feet to spare in avoiding a collision; that at 10 MPH the intervening distance was 29⅓ feet, with a capacity to stop in 16 feet, leaving a margin of 13⅓ feet in which defendant could have stopped; that at 15 MPH the intervening distance was 40 feet, with a capacity to stop in 28 feet, leaving a margin of 12 feet in which defendant could have stopped. But, says appellant, Instruction No. 5 "requires the jury to find that under no circumstances would the plaintiff be in a position of imminent peril until plaintiff was 29 feet away from the point of collision, or in other words, until the brakes were already applied on the car she was in. Only then would it be, under this instruction, the duty of defendant to avoid the collision, and under those facts obviously defendant could not have avoided the collision." Appellant contends that the zone of peril should not be restricted to this extent; that defendant's duty to act arose when there was a likelihood or probability of danger, and that defendant is not "allowed the luxury of waiting until the danger was absolute and there was no longer any possible chance to avoid" the collision. In support of this argument appellant cites Lefkowitz v. Kansas City Public Service Co., Mo.Sup., 242 S.W.2d 530; Nored v. St. Louis Public Service Co., Mo. Sup., 319 S.W.2d 608 and Morhaus v. Hebeler, Mo.App., 104 S.W.2d 737. In her

argument appellant relies alone on Lefkowitz v. Kansas City Public Service Co., in which plaintiff, a pedestrian, was struck by a streetcar, and in which the evidence was such that the jury could find that plaintiff was oblivious to the continued, unabated approach of the streetcar. The case was submitted to the jury under the humanitarian doctrine on assignments of negligent failure to warn and failure to stop. The opinion aptly points out that the duty to act upon reasonable appearances of obliviousness arises "when it reasonably appears, or should reasonably appear, to the operator of an instrumentality exercising due care, that a person is oblivious, and will remain oblivious, and continue into the path of the moving object." 242 S.W.2d loc. cit. 532. Obliviousness broadens and extends the zone of imminent peril and it is true that where obliviousness, or the reasonable appearance of obliviousness, is present the duty to act arises when there is a likelihood, i. e., a probability, of danger. In such case, as properly held in Lefkowitz, it would be error to instruct the jury that "likelihood of injury" would not constitute imminent peril. The distinction between that type of case and a case where obliviousness is not an element was carefully delineated in the Lefkowitz opinion. Obliviousness, or the reasonable appearance of obliviousness, is not an element in the instant case. The rule in the Lefkowitz case has no application here. Plaintiff's husband was not oblivious. He testified that when he first saw defendant's car he applied his brakes "to see what was going to happen." Not only was he aware of the approach of defendant's car, but he was aware of the danger of collision, as shown by the fact that he took immediate action in avoidance. Nor was there evidence from which the jury could have found that plaintiff's husband *appeared* to be oblivious. From the evidence that plaintiff's car left 28 feet of brake marks the jury could find that the brakes of plaintiff's car were locked and its tires sliding for that distance preceding the collision. The policeman saw the plaintiff's car "sliding";

saw that it was "in a skid." Defendant would have seen the same, if she had been looking. Under the humanitarian doctrine defendant was under no duty to act until a situation of imminent peril came into existence. In the absence of obliviousness the position of peril of a person approaching the path of an oncoming vehicle reaches no farther beyond the direct path of the oncoming vehicle than the distance within which the approaching person is unable by his own efforts to stop short of its path. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 53; Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S.W.2d 51, 53; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498; Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699; Hayes v. Coca-Cola Bottling Co. of St. Louis, Mo.Sup., 269 S.W.2d 639, 642; Yarrington v. Lininger, Mo.Sup., 327 S.W.2d 104, 110; Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60, 63, or to turn his vehicle in time to avert a collision. Banks v. St. Louis Public Service Co., Mo.App., 249 S.W.2d 481, 484. This principle was stated in Instruction No. 5. We find no error in the submission of this principle under the instant facts.

Neither of the other cases cited by appellant bears on the point under review. Nored v. St. Louis Public Service Company was a situation of obliviousness to apparent danger. In Morhaus v. Hebeler, a pedestrian, unaware of his danger until it was too late to get out of the way, was struck by an oncoming automobile while standing in the street.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.