**Melvin HALEY, Plaintiff-Respondent,**

**v.**

**Richard James MOORE, Defendant-Appellant.**

**No. 32710.**

St. Louis Court of Appeals.

Missouri.

July 18, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 12, 1967.

Application to Transfer Denied Nov. 13, 1967.

Eaker & McGuire, Lloyd E. Eaker, Clayton, Mo., for defendant-appellant.

Steward & Bruntrager, Joseph G. Stewart, St. Louis, for plaintiff-respondent.

ANDERSON, Presiding Judge.

Plaintiff, Melvin Haley, brought this action to recover damages for personal injuries alleged to have been sustained when he was struck by defendant's automobile while crossing Franklin Avenue a short distance west of 19th Street, in the City of St. Louis. The trial resulted in a verdict for plaintiff for $5,000.00 From the judgment on said verdict, defendant has appealed.

Plaintiff submitted his case solely on defendant's humanitarian negligence in failing to swerve. Defendant assigns as error the failure and refusal of the trial court to sustain his motion for a directed verdict at the close of all the evidence for the reason that plaintiff failed to make a case for the jury on the issue submitted. We will therefore state the facts bearing on that issue, and in deciding the matter consider only that evidence and the inferences therefrom most favorable to plaintiff.

The accident in question occurred on August 12, 1963 about 4:45 p. m. Franklin Avenue runs east and west, and 19th Street runs north and south. The two streets intersect at right angles. Franklin is a one-way street for westbound traffic. Its width according to plaintiff's testimony is approximately "I would say fifty to fifty-five feet" and 19th Street is approximately thirty-five or forty feet wide. Franklin has five traffic lanes. At the time in question, no parking was permitted on the north side of Franklin. It had been raining that day but at the time of the accident the weather had cleared and the streets were not very wet. Defendant was operating his 1963 Pontiac west on Franklin Avenue at the time. With him in the car was Bernard Flotte. They were traveling in the 4th lane from the north curb, and next to the south curb lane. Shortly prior to the accident, plaintiff had made a purchase at Meyer Broth-

ers Supermarket located on the north side of Franklin. Said market is the second building west of 19th Street. After making the purchase, plaintiff emerged from the front door of the Supermarket and walked south to the north curb of Franklin. His intention at that time was to cross Franklin to buy cigarettes at a filling station located some distance to the west on 20th Street. He stated that when he reached the curb he was about 10 or 15 feet west of 19th Street. He looked toward the east at that point and became aware of traffic on Franklin around 18th Street. He stated he could not say whether there were a large number of cars there or whether the traffic was stopped or moving. He further stated that there was a "dip" in Franklin between 18th Street and 19th Street; making Franklin lower about 250 feet east of 19th Street. Plaintiff then stepped from the curb intending to cross the street. He walked at a slight angle toward the southwest. He stated that when he got to what he considered to be the center of the street he again looked toward the east but saw nothing. He did not recall whether he looked to the east after crossing the center of the street. He stated that when he was two-thirds of the way across the street he assumed he was safe and kept going. He further testified: "I was about ten or fifteen feet from the south curb when I heard a woman scream. I looked in time to see only the chrome of a car that struck me." He stated he was rendered unconscious and when he first became aware of things thereafter he was sitting on a box on the south sidewalk. He further stated that the next thing he remembered was that he was in the receiving room of the City Hospital.

As a part of his case, plaintiff introduced in evidence certain questions and answers thereto appearing in a deposition of defendant taken prior to the trial. In said deposition, defendant stated that his name was Richard J. Moore; that on August 12, 1963, he was involved in an automobile accident with a pedestrian; that the accident occurred at 4:30 or 5:00; that he was driving at the time; that his automobile hit a man; and that this person was hit by the front of the car near the driver's side. Defendant further testified: "I had just stopped at 18th Street for the stop sign. Generally there is a stop sign at 19th Street, which * * * is a school stop sign, but a lot of time it isn't always turned around. Sometimes you have to stop and in an evening time I come through there frequently, so I know about the stop sign. But this particular evening * * * anticipating the stop sign I couldn't have got up no more than maybe fifteen or twenty miles * * *. * * * I was traveling in the south lane next to the cars. Q. Next to the parked cars? A. Yes, sir."

Defendant testifying at the trial stated there was a stop sign for westbound traffic at 18th Street; that he made a stop at 18th Street in obedience to said sign; that there were other cars ahead of his car at that point moving forward in all four traffic lanes; that when he reached 19th Street the speed of his car was about 20 miles per hour; that when he reached the intersection and went through it there were cars ahead of him operating in all lanes of traffic; that when he was at 18th Street he was able to see clearly everything on Franklin to 20th or 21st Street; that when he was a few feet from 18th Street he saw Haley come out of Meyer Brothers Store and walk directly to the curb; that he then proceeded downgrade into the "dip" between 18th Street and 19th Street; that when he came out of the "dip" and approached 19th Street, he "checked" the corner because he could clearly see all points on 19th Street; that after he had crossed 19th Street a car in the lane to his right appeared as though it was going to stop, and then Mr. Haley suddenly came across into his lane; that he blew his horn and stepped on the brake but his car skidded until it touched Mr. Haley, then suddenly stopped; that when he saw Mr. Haley the latter was walking and looking

southwest; that Mr. Haley fell directly in front of his car; that the only time Mr. Haley looked toward him was when his car was skidding; and that the brakes on his car were set and he was blowing the horn when Mr. Haley suddenly turned and put his hand on the car.

Defendant testified on cross-examination that he did not see plaintiff step off the curb; that when he first saw plaintiff he did not know whether plaintiff was going to cross the street or just stand at the curb; that when his car struck plaintiff the latter put his hand up to brace himself then slumped to the pavement; that he was possibly two cars or thirty or thirty-five feet from plaintiff when he first saw plaintiff emerge from in front of the car to his right; that plaintiff was not moving fast and was headed southwest; that he applied his brakes when he was two car lengths from plaintiff; that there were two cars in the lane to the north with not much space between them, not even 10 feet between them; that it was the second car ahead of him to his right on which the brakes were suddenly applied to which he reacted, at which time plaintiff was two car lengths ahead; that just prior to the collision, he swerved his car a little to the left, and to the right but could not go anywhere; that there were cars parked there on the south side of the street but he did not know the distance between those cars and his; and that he was at the time traveling around 22 or 23 miles per hour.

Defendant's witness, Mr. Flotte, did not see plaintiff until he had stepped about a foot or two into the lane of traffic in which defendant was driving at which time defendant's car was about two car lengths from plaintiff; that there were cars to the right and ahead of defendant's car, traffic being heavy at that time; and that the distance between defendant's car and the vehicle to defendant's right was about 2 or 3 feet; that he believes defendant did swerve, but was not real sure about it; that he would say defendant swerved to the left, but qualified this statement by saying "I don't know exactly."

The witness further testified that plaintiff was struck by the left front of the car and that defendant's car stopped almost instantly after the impact.

■ The sole question for our determination is whether plaintiff made a case of failure to swerve. The burden of proof on this issue was on plaintiff, and in order to sustain that burden it was incumbent upon plaintiff to show that defendant could have swerved and have avoided the accident without injury to himself, his passenger and others. Kinealy v. Goldstein, Mo.App., 400 S.W.2d 438. Plaintiff failed to sustain this burden. He offered no evidence from which the jury could reasonably infer that at the time he entered a position of immediate danger the lane to defendant's right was free of traffic, and that he could have swerved without endangering himself and others. Respondent, of course, disputes this conclusion. It is urged that plaintiff's testimony that he looked to the east when he reached the center of the street and saw no cars approaching is proof there were no cars to defendant's right to obstruct his view of plaintiff or to limit the available space for swerving when defendant's duty to act under the humanitarian doctrine arose. We cannot so regard such testimony. According to plaintiff's testimony, Franklin is 50 to 55 feet wide. While standing at the north curb, plaintiff became aware of cars at 18th Street westbound. He then walked 25 or 27 feet to the center of the street and again looked east, but saw no cars. This testimony does not prove there were no cars in the lane to defendant's right, but the only reasonable inference that can be drawn therefrom is that the cars plaintiff had previously seen, including that of defendant's, were at that time in the "dip" just east of 19th Street. Plaintiff then walked slowly from the center of the street in a southwest direction and entered the 4th land without again looking toward the

east. At some point, after leaving the center of the street, plaintiff came into a position of immediate danger of being struck by defendant's car, which had emerged from the "dip". It was then that defendant's duties arose under the humanitarian doctrine, and it was incumbent on plaintiff to show by substantial evidence that defendant could have thereafter swerved without injury to himself and others, the theory of his submission. The fact that plaintiff saw no cars approaching when he reached the center of the street does not, in view of the evidence, establish that important fact.

Plaintiff further contends that even though there were cars to defendant's right, as shown by defendant's evidence, a reasonable inference could be drawn from the evidence that there was sufficient space between defendant's car and those to his right into which he could have swerved and thereby have avoided striking plaintiff. He relies on his own testimony and that of defendant's witness Flotte. The latter testified that the distance between defendant's car and the car to his right was two or three feet. Plaintiff testified that he had reached a point about ten or fifteen feet from the south curb when he heard a woman scream an instant before he was hit. This bit of testimony, in view of the tight situation presented, was too indefinite to fix the point of contact. Flotte, when asked if defendant swerved, replied, "I believe he did, sir. I am not real sure, but I believe he did." He then gave the following testimony: "Q. Then would you know what direction he went? A. I would say to the left. Q. Do you know? A. I don't know exactly, no sir." Flotte also testified on cross-examination that plaintiff was struck by the front of the car on its left side. He was then asked the following leading question. "Q. The left front corner?" His answer was "yes".

Plaintiff argues that when the foregoing testimony is considered along with the fact that a Pontiac automobile is approximately six feet wide (of which there is no evidence) defendant had approximately five feet within which to swerve to the right and avoid striking plaintiff.

■ In order for a plaintiff to recover in a humanitarian case every element of his theory of submission must be supported by substantial evidence of probative value or by inferences reasonably deducible therefrom, Vietmeier v. Voss, Mo., 246 S.W.2d 785, and a judgment may not stand where it rests solely upon speculation, conjecture and surmise with respect to an essential element of the case. And if the evidence, taken in the light most favorable to plaintiff, shows but a mere possibility of avoiding the accident a submissible case is not made. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33. In our judgment, plaintiff's case does not meet these tests.

■ Great reliance is placed upon the testimony of Flotte that the distance between defendant's car and the one to defendant's right was 2 or 3 feet. However, there is no testimony as to position of the second car ahead in the lane to defendant's right, which would be in the direction of a swerve by defendant to his right. Plaintiff also relies upon the statement by Flotte that he believed defendant swerved but was not real sure, and that he would say that the direction of the swerve was to the left, but that he did "not know exactly." Can this evidence be said to be substantial evidence to be considered in the determination of the issues presented? "Substantial evidence is that evidence which, if true, 'has probative force upon the issues * * *' and from which the trier of fact can reasonably decide the case on the fact issues." Cupples Hesse Corp. v. State Tax Commission, Mo., 329 S.W.2d 696, l.c. 702. In applying this principle it was held in Weeks v. Atchison, T. & S. F. Ry. Co., 232 Mo.App. 429, 109 S.W.2d 374, l.c. 376, that testimony by a person that he "guessed" that the distance between two tracks was 7½

feet; but that he did not measure it and did not have very good judgment as to distances, was not substantial evidence. On the authority of the above case, we rule that Flotte's testimony with reference to swerving to the left had no probative value, and should not be considered.

 It is our opinion that under the evidence in this case, any conclusion that defendant's car could have been swerved to the right without danger to himself and others after plaintiff came in to a position of immediate danger could only rest upon speculation, surmise, and conjecture, and that the court erred in overruling defendant's motion for a directed verdict.

The judgment is reversed.

RUDDY and WOLFE, JJ., concur.